Locke
 
 — Judge
 

 delivred .opinion of the court.-— The Legislature of North Carolina in the year 1789, grant- ■ cd
 
 to
 
 the Trustees of the University “ all the property that has heretofore or shall hereafter escheat to the,,state,”
 
 (a)
 
 And by another act passed in the year 1794, they also granted; “ The confiscated property then unsold.”,
 
 (b)
 
 By aii act passed in the year 1500, they declared, “ that from, and after the passing.of this act, all acts and.clauses of, acts, which have heretofore granted power to the Trustees of the University, to seize and posses* any.escheated or coin fiscated property, real ór personal, shall he and the same is hereby repealed and made void.
 

 (t-‘Andie it further
 
 enacted, That all escheated or confiscated property which the said trustees, their agents or at. torriies have not legally sold by virtue of the said laws, shall from,hence revert to the state, and henceforth be consider-, ed as the property of the same, ,as though such laws had never been passed.” —
 
 (c)
 

 The Trustees of the University in pursuance of the powers vested in them by the act of 1789, have brought this suit, to recover the possession of a tract of land escheated to the state, before the passing of the repealing act in the year 1800. The defendants have pleaded this repealing act
 
 *82
 
 jn bar, by which they allege the power of the trustees to support this action is entirely destroyed. It- is therefore considered how far the Trustees have title tinder the act of 1789, and in the next place, how far they are diof that title by the repealing act of 1830. ■ .■
 

 To determine the first question, it may be necessary to take into view the objections stated to the title of the Trus-teesi independent of the operation of the repealing act, and these are two: first, that no title to escheated lands' vests in the state until an inquisition or office found ; and secondly,' that if the state had title, yet the Trustees have derived none by the act of 1789, because the state attempted to convey the right by act of Assembly and not by grant as required by the 36th section of the Constitution. . With regard to the first objection, the court think it a sufficient answer to say, that on this subject the láw has been suppoS* ed to be long settled, as this objection hás been made in almost every suit heretofore brought by the Trustees of the University, and always overruled. The court approve of’ the decisions upon this point, and will observe the ancient and wise maxim «
 
 stare
 
 decisis.” 2 Black. 245,
 
 2
 
 Co. Rep. 52.
 

 As to the second objection, the words of the constitution are, « all commissions and grants shall run in the name of the State of North-Carolina and bear test and be signed by the Governor,” &c. It seems to be a fair and clear exposition of this part of the constitution to say, that when the stale conveys land by grant, the grant shall liave the requisites prescribed, to’ wit, run in the name of the state,' bear teste and be signed by the Governor, &c. and that alb grants otherwise authenticated shall be void. It became necessary that the officer, whose duty it shall be
 
 to
 
 sign and authenticate grants, should he pointed out, and that their form and substance should be ascertained, in order to give uniformity to such grants and to avoid that variety which would be produced by the judgment of different officers* But the court see nothing in this clause restricting thé Le
 
 *83
 
 gislature to this singly modo of conveyance ; they are left free from any control in the mode or manner of ing their property, unless they should adopt the one pointed out in the constitution, and then the form and ceremony are ' , .... _ _ _ prescribed. Tins opinion is warranted not only by the pressions contained in the clause itself, but by the many and repeated acts of Assembly passed, since the making o.f the Constitution, for the, purpose of transferring property. Many of these acts have been mentioned and referred to by the counsel for the lessors of the plaintiff. We are therefore of opinion that tl>e land in question vested in the state without an inquisition or office found, and that the Legislature were competent to pass the interest in the same to the Trustees of the University by the act of 1789 ; and that the Trustees have a good and valid title, unless the operation of the repealing act of 1800 has destroyed it.
 

 The operation of this act is next to be considered ; and ¡f may be necessary to premise, that the people of North-Carolina, when assembled in convention,.were desirous of h iving some rights secured to them, beyond the control of the Legislature, and these they have expressed in the bill of lights and the constitution. The preamble to the constitution states among other things that « we the representatives of the freemen of Nortli-Carolina, chosen and assembled in Congress for the express purpose of framing a constitution, under the authority of the people, most conducive to their happiness and welfare, do declare, &c.” Section 13th directs the General Assembly to elect several officers of state. Section 15th, directs the election of, a Governor. Section 38th, directs, that there shall be a Sheriff, Coroner or Coroners and Constables in each county. It became neces-savy for the Legislature to appoint these officers or to pass such laws as would secure to the people such officers as would carry this form of government into effect. The framers of this instrument appear to have been well sfbquainted with the importance and necessity of education, -and lest this object might escape the attention of the Legislature or
 
 *84
 
 be by them neglected^ section 4ist declares, “ That a school or schools shall be established by the Legislature for' the convenient instruction of youth, with such salaries to the masters paid by the public as may enable them to instruct 4
 
 *
 
 1,
 
 J 1
 
 at low prices; ami áli useful learning shall be encouraged an(| promo|-¿t¡ ¡n one or more Universities’.” ‘By this si’ction as strong an injunction was imposed on the Legislature to establish an University as by the preceding clauses to appoint the several officers of government; these objects'seem to be regarded by the framers of the constitutiori'with equal solicitude; they have therefore in the same imperative style declared that there shall be an University',1 and that thoro shall be a governor, leaving to the Legislature to make such appropriations and create such funds for the endowment of, the institution as would- be sufficient- to effect the purposes, for which it should be established- ‘ In the year 1789, the Legislature obeyed this’constitutional injunction and made an appropriation of escheated lands and appointed Trustees for the management of the concerns of the institution. By the act of 1800, the Legislature declared that this property should be taken from the Trustees and revert to the state. Is then this last act authorised by the constitution, or does it destroy a right which that instrument gave to the people,
 
 *
 
 right highly .esteemed in all civilized nations, that of edu-eating their youth at a moderate expense? a right.of acquiring knowledge and good morals, which have always been deemed most conducive to the happiness and prosperity of a people?
 

 Some light will be thrown upon this subject by examining the nature of corporations, how property can be taken • from them, and how they can be dissolved. Corporations are formed for the advancement of religion, learning, cbiti-naerce.or other beneficial purposes. They are either aggregate 05 sole, and created by grant or by law. When they ^re once erected, they acquire many rights, powers, capacities .amf some incapacities, 1 Black. 495, as 1st, to have perpetual succession and therefore all aggregate corpora-
 
 *85
 
 dons have necessarily the power of electing members in the .room of those who die, to. sue and be sued and to do all oilier acts as natural persons. 2d. to purchase lands and to hold them for the benefit of themselves and successors, ■ 4th to nave a common seal. 5th. to make bye-laws for the Better government of the corporation. These corporations' cannot commit' crimes, although their members may in their individual capacity. The duties of those bodies consist iri acting up to the design-for which they were instituted. Let us next enquire liow their corporate property can be taken from them and ho.w they may be dissolved. A member may be disfranchised or lose bis place by his own improper conduct, or he may resign. A corporation may be dissolved by act of Parliament, which is boundless in its- operation; by the natural death of ail its members, in case of an aggregate corporation ; by surrender of its franchises into the hands of tljekiog; which is a kind of suicide; by forfeiture bf* its charter through negligence or abuse of its franchises, in which case the law judges the body politic to have broken the conditioh on which it was incorporated, and therefore the incorporation to be void ; and the regular course is to bring an information in the nature of a
 
 quo Warranto» to
 
 enquire by what authority the. members now exercise their corporate power, having forfeited it by such and such proceedings. 1 Bla.dc. 485, S Black. 2C3. None of these'prerequisites have been done in the present case. — We are then led to enquire into the soundness of an argument greatly relied on by the defendant’s counsel, that those who create can destroy. The Legislature have not pretended to dissolve the Corporation, but to deprive them of a part of the funds, that were deemed to be vested in them, and to transfer those funds to the state. In England the king’s consent to the creation of any corporation is absolutely necessary, either given expressly by charter or by'act of Parliament, where his assent is a necessary ingredieht or implied hy prescription. 1 Black. 472, 473. ‘The king may grant to a sub. ject the power of erecting a corporation; and yet -it is the king that erects, the subjectjsbut the instrument. '1'Black»
 
 *86
 
 474, Where there is an endowment of lands, the law dis-linguistics and makes two species of foundation; the first,
 
 mcipiens,
 
 or the corporation ; in which sense the king -‘s ‘he founder of ail Colleges and Hospitals : the other,
 
 fundado prof.dens,
 
 or the dotation of it, in which sense the first gift of the revenues is the foundation, and who gives them is the founder : 1 Black. 4¡3t. — The constitution directed the General Assembly to establish this institution and endow it; then it would seem from the principle upon which all this doctrine is predicated, that the constitution and not the Legislature bad erected this corporation; the Legislature being only the agent or instrument, whose acts are valid and binding when they do pot contravene any of the provisions of the constitution. We view this corporation as standing on higher grounds than any other aggregate corporation ; it is not only protected by the common law, but sanctioned by the constitution. It cannot he considered that the Legislature would have complied with this conslituiional requisition, by establishing a school for a month or any determinate number of years, and then abolishing the institution
 
 ;
 
 because. the people evidently intended this University to be as permanent as the Government itself. It would not be competent for the Legislature to declare that there should be no public school in the state, because such an act would directly oppose that important clause in the constitution before mentioned. But if the Legislature can deprive the University of the appropriated and vested funds, they can do that which will produce the same consequences ; for deprive the institution of funds already vested and refuse to make any additional appropriations, there never can exist in the state a public school or schools ; and thus the Legislature may indirectly effect that purpose, which if expressed in the words before mentioned they conld not do. Besides, whew the Legislature have established an University, appointed Trustees and vested them with property which they were hold in trust for the benefit of the institution, have they discharged t heir duty as the agents of the people and transferred property which is afterwards beyond their corf-
 
 *87
 
 trol ? — From that moment the Trustees became in some measure the agents of the people, clothed with the power of disposing of and applying the property thus vested to the uses intended by the people, but over which the power of the Legislature ceased, with the discharge of the constitutional injuuc'hu); unless it might he necessary in the course of time to make other or further appropriations to continue and support the institution : and this we consider to bo their duty at all times, when such necessity shad exist, that the exportation ox the people, as expressed in the constitution may not be disappointed.
 

 But one great and important reason whicli influences us in deciding this question, is the 10th section of the bill of lights, which declares “ that no freeman ought to be taken/ imprisoned, or disseized of his freehold, liberties or privile-. ges, or outlawed or exiled, or in any manner destroyed or deprived of his life, liberty nr property, but by the law of the land.” — It has been yielded on the part of the defend-, ants that if the Legislature had vested an individual with the property in question, this section of the bill of rights would restrain them from depriving him of such right: but it is denied that this section has any operation on corporations whose members are mére naked Trustees, and have no interest in the donation, and especially on a corporation erected for a public purpose. It is also insisted that the term,« Law of the Land,” does not impose any restrictions ón the Legislature, who are capable of making the Law of the Land, and was only intended to prevent abuses in the other branches of government. That this clause was intended to secure to corporations as well as to individuals the rights therein enumerated, seenis clear from the word “
 
 liberties,”
 
 which peculiarly signifies those privileges and rights which corporations have by virtue of the instruments which incorporate them, and is certainly used in this clause in contradistinction to the word “
 
 liberty”
 
 which refers to the personal liberty of the citjzen. We therefore infer that by this clause the legislature are as much restrained from
 
 *88
 
 affecting the property of corporations, as they are that of a private individua!, unless the expression, “Law of the Lan(j j> slioultf receive the construction contended for on the * part of the Defendant. — It is evident the framers cf the ; l- 1 , . constitution intended the provision as a restraint upon some ^,..,^¿1, 0f t!10 government, either the Executive, Legisla" tive, or Judicial. To suppose it applicable to the executive would be absurd on account of the limited powers conferred .on that
 
 officer;
 
 and from the subjects enumerated in that clause, no danger could bcapprehended, from the Executive Department, that being entrypted with the exercise of iio powers by which the principles thereby intended to be. secured could be affected. To apply it to the Judiciary, would, if possible, be still more idle, if the Legislature cair make the «
 
 Law of the Land.”
 
 For the J udiciary are only to expound and enforce the law and have no discretionary powers enabling them to judge of the propriety or impropriety of laws.' They áre bound, whether agreeable to their ideas of justice or not, to carry into effect the acts of the legislature as far as they are binding or do not contravene the constitution. If then this clause is applicable' to the. legislature alone, and was intended asa restraint on their acts, (and to presume otherwise is to render this' article a dead letter,) let us next enquire, what will be the operation which this clause wiii^or ought to have on the present question. It seems to ús to warrant a belief that members of á corporation as well as individuals shall not be bo deprived of their liberties or property, unless by a trial by Jury in a court of Justice, according to the known and established rules of decision, derived from the common law, and such acts of the Legislature as are consistent with the constitution — and although thé Trustees are a corporation established for public purposed* yet their property is as-completely beyond 'the control of the Legislature, as the. property of individuals or that of any other corporation, Indeed, it seems difficult to conceive of a corporation established fox1, merely private purposes. In every institution of thát kind, the ground of. the establishment is some public
 
 *89
 
 good of purpose intended to be promoted
 
 $
 
 but in many,
 
 tha
 
 members thereof hare, a private interest, ^coupled with the public object. In Ibis case,'.the trustees have vate interest beyond the general good: yet we conceive jthat circumstance will not make the property of the tees subject to the arbitrary will of the Legislature, The property vested in the Trustees must remain for the uses intended for the. University, until the Judiciary of the country in the Usual and common form, pronounce them guilty of such acts, as will, in láw^ amount to a forfeiture of their rights or a dissolution of their body. The demurrer must therefore be allowed, and the plea in bar ovcruL ed,
 

 Hall
 
 —Judge
 

 —Contra.—A aquestion of more importance than that arising in this case, cannot come before a court. It is nothing less than one branch of the government undertaking to decide, whether another branch of the same government has or lias not transcended its constitutional powers $ a question which in its discussion should at all times command the best energies of the head and heart» When this shall be the case, although a difference of opinion may sometimes exist, it will be an honest one, and cannot fail to find its remedy in .mutual tolerance and concession. But well convinced, indeed, ought one person to be of another’s error of judgment, before he passes sen-tcncc of condemnation on it, when he reflects that each has given the same pledges to support the constitution. Before a law enacted by the legislature should be pronounced unconstitutional, it ought to appear to the court to be palpably so : if an honest doubt can be entertained on the subject, we pwe it to ourselves as well as to the legislature, to carry it into effect. . Far be it from me, if it p?ere in my power, to damp that laudable and honest zeal, which cha-racterised the argument of the defendant’s counsel; it cannot be too much extolled or too widely circulated: but I speak it with deference to the opinions of my brethren, that I think, occasions might occur, when its influence would be
 
 *90
 
 more happily felt and lead to more useful and correct re-suits. In the opinion which I have formed on this question I am probably mistaken, as I have the misfortune to differ from the rest of the court: but from the best consideration . . , ,. , I can give to it, I am bound to say, that I behove the law in qUeg^on jg uq! unconstitutional.
 

 I feel no disposition to controvert many things urged in argument by the defendant’s counsel; he has had recourse, however, to one argument, which I think militates against him. It is drawn from the41st section of our constitution, which is in the following words : “ a school or schools shall be established by the Legislature, for the convenient instruction of youth, with such salaries to the masters, paid by the public, as may enable them to instruct at low prices : and all useful learning; shall be duly encouraged and promoted in one or more Universities.” He endeavours to strengthen his general proposition, namely, “That any law taking away the property of an individual or a common corporation is unconstitutional,” by stating, in addition, that there was a constitutional obligation on the Assembly to set apart funds for the support of the
 
 University;
 
 and if it were constitutional and right for them to do so, it is unconstitutional and wrong to take away those funds. If the framers of the constitution intended by that seciion that the Legislature should establish'one or more Universities and schools, and vest in them certain funds, which might be deemed sufficient at the time for their support in a constitutional
 
 view;
 
 if it were intended that by doing this, the Legislature had completely discharged their duty, and had nothing more to do with such schools and Universities,1 whatever misfortunes might afterwards attend them, there might be something in the argument. I think, however, this section of the constitution was intended for a very different purpose. It became the duty of the Legislature, created by and acting under that constitution, to establish seminaries of learning, with salaries to the masters, &c. and afterwards to support and cherish them as long as the con
 
 *91
 
 stitution shall exist. If by accident the funds set apart for their eiijjpovt should be destroyed, it would be the duty the Legislature to endow them with others. The Legisla-3 ture is the constitutional guardian of these seminaries of learning, and should at all times keep them under their in-spcction and control. This is a duty which they cannot de. legate or transfer to any one, and can only end with the constitution itself. Suppose then, that property should be given tó the Trustees of the University (whom I consider, in no other light than as agents of the Legislature,) which property was not very productive, but sufficiently so for the' support of the University; and afterwards it were to become so much so, that one third of. the profits arising from it, would be adequate to the wants of the institution, who would have a right to the surplus ? — Let us reverse- the case and suppose the profits of property given to the Trustees to decrease or fail altogether; would it not be the duty of the Legisture to provide other funds or give other property which would be sufficiently productive ? I think it would. If so, can it be doubted, but that the surplus profits would be at the disposition of the Legislature ? It may be said that the Trustees have no surplus funds, that the profits of their property are not equal to the wants of the institution. That may be the case 5 but who is to judge of it ? I answer, not this court: the constitution gives it no such power. The Legisture must, be the j udge. It would be going too far to say, that there was a constitutional obligation on the Legislature to do a certain thing, and that this court and not the Legislature should decide when it was properly done. If, then, the Legislature must judge how large the funds of the University ought to be, add to them when they.., are too small and take from them when too large, this court, are not the proper judges in such cases : and if not, how can we undertake to say that the law in question is unconstitutional ? It cannot, I think, be denied that the General Assembly have a right to take from the Trustees property of which the University stands in no need, and that
 
 *92
 
 f0P the best of reasons; because they are bound to furnish it with additional funds, as those which it already possesses decrease, or as its wants may increase. 1 have said that the General Assembly cannot delegate this constitu-_ . , " tional
 
 power;
 
 that is, that they cannot, by giving to the Trustees any quantity of property or any given sum of money exonerate themselves from the trust and confidence which the constitution reposed in them. ' It is true they may appoint Trustees as their agents Co act for them, and tlicit Trustees or agents are amenable to them for their conduct; they have a naked authority without any interest. The law' can have no hearing upon them as individuals; it can Only affect them in their public character as Trustees. And'' how is it to do this ? They were entrusted with property' for the purpose of supporting an University in conformity with the directions of- the constitution, and the General Assembly are about to take this property from them, which they contend they have no bight to do?!If the Assembly arc hound in any event to furnish' funds 'to support the University, they have a right to takeaway surplus funds. If it be said that the property in question is not of that description, I answer, who are to judge of' this, but the General Assem-, lily, on whom there is a Constitutional obligation to establish and superintend an University ? On the Trustees, no such, obligation is imposed: they are the mere agents of the Legislature ^ and as wrnll might it he said that any other citizens equal in number to the Trustees should be placed paramount to the Legislature. I therefore can see no analogy between this cash and that of a gift made to an individual or to an ordinary corporation. My opinion upon the whole case, is founded upon the provisions of the constitution, and regarding the Trustees as mere agents for the management of the concerns of the University under the direction of the Legislature, I think the demurrer should he overruled and the plea in bar sustained,
 

 (a)
 

 Ch. 21, Sec. 2
 

 (b)
 

 Ch. 3, Sec. 1 —
 

 (c)
 

 Ch. 5.