On the trial, and after the jury had been charged with the cause, the defendant's attorney moved for leave to add a special plea that the judgment on which the present warrant had been brought was rendered in the county of Franklin by a justice of the county of Granville; but the presiding judge refused the leave asked. The plaintiff then produced and duly proved the original warrant, the judgment thereon against the defendant Wright, the stay of execution by the defendant Parrish, on which the present suit was founded. These all appeared to be perfectly regular; the judgment appeared to have been confessed by the defendant Wright.
The defendant then called as a witness Anderson Paschall, the justice before whom the judgment appeared to have been confessed, and (284) asked him where the said judgment was confessed; upon which defendant's counsel, being asked to state the purpose and show the relevancy of his inquiry, said that he expected to show by this witness that the judgment was confessed at a place called Plank Chapel, and then by another witness that Plank Chapel was in Franklin County.
Plaintiff's counsel then objected to the question put to Paschall, and the court sustained the objection. There was a verdict for the plaintiff, and a motion by defendant for a new trial, first, for the refusal to permit the special plea to be added, and, second, for the rejection of Paschall's evidence. Motion overruled and judgment rendered, from which the defendant Parrish appealed.
This was an action originating by way of warrant, in a paper purporting to be a judgment rendered by a justice of the peace in the county of Granville. On the trial the defendant offered to plead and prove that the judgment was rendered in the county of Franklin by a justice of Granville; the plea and evidence were rejected, and the propriety of this rejection is now argued on the authority of Bain v. Hunt, 10 N.C. 572. But in this case no question arose as to the proof of the record, it being assumed and admitted throughout that the judgment of the justice had an authentic existence. The only inquiry was as to the effect of such a judgment when proved; and every observation and argument tending to show its conclusiveness upon the right of the *Page 127 
parties to it would have been irrelevant, upon the supposition that the judgment declared on had no existence in point of fact.
In this case the point in contest is altogether different; it relates solely to the existence of the judgment set up; the defendant does not object to it because it is unjust or founded on a misconception of the merits of the case, for these inquiries can clearly never be made in an original suit founded on the judgment; but because no judgment (285) was given. It is impossible to apply the rules of evidence, established in relation to the authentication of records of courts of justice to the proceedings before magistrates. They cannot be decided on by inspection, they have no seals, they keep no copies of their proceedings, and the knowledge of their official existence is necessarily confined to the county of their residence. No provision is made by law for the authentication of their judgment, except in one instance; and, in the absence of such legislative provision, the inquiry must continue to be conducted, as it heretofore has been, by proof of the justice's handwriting either by himself or others, and by proof that the judgment was given by him, then a justice, within the limits of his jurisdiction. All these considerations arise out of the issue to be decided; for if he were not a magistrate in the county where the judgment was rendered, at the time of its rendition, there is consequently no such record, and the issue is maintained on the part of the defendant.
If the inquiry as to the jurisdiction is excluded, the same rule applies to the exclusion of an inquiry into the official character of the individual who holds himself out to the public as a justice of the peace; and the consequence will be that any individual may assume that character, and sign papers which shall have the force of judgments against other persons, simply on the proof of his handwriting, and that many such papers had been signed by him. When so much importance is attached to the judgment of magistrates as to render them unexaminable in another suit, their existence and authenticity ought to be established beyond controversy; and since the extensive civil jurisdiction of magistrates in this State has placed their judgments on an anomalous footing, and beyond the strict application of the rules of evidence pertaining to the regular judgments of courts, their legal existence ought to be ascertained by every reasonable inquiry before they are ultimately enforced.
For these reasons I think the evidence offered ought to have been received, and that there should be a new trial.