STATE ex. rel. JAMES A. BRYAN, et. als. v. D. W. PATRICK, et. als.

(Decided May 9, 1899).

*Board of Internal Improvement—President and Directors of the Atlantic and North Carolina Railroad Company—Public Office—Term of Office.*

1. A provision for an appointment to office *"biennially"* ex vi termini, implies a two years' term of office.
2. A *term* of office embraces the ideas of tenure, duration, emolument and duties.
3. An office is property, and is protected by the rule, which applies to property of a more tangible character.
4. An Act undertaking to deprive the legal incumbent of his office without his consent is void. *Hoke* v. *Henderson*, 15 N. C., 1.; *State Prison* v. *Day*, at present Term.

CIVIL ACTION for the recovery of the offices of President and Directors of the Atlantic and North Carolina Railroad Company, tried before *Hoke, J.,* upon facts agreed, at Spring Term, 1899, of the Superior Court of EDGECOMBE County.

The following are the facts agreed:

1. That the Atlantic and North Carolina Railroad Company is a corporation, duly created and organized under the laws of the State of North Carolina, and that the said State owns two-thirds of the capital stock in said Company, and is entitled to appoint eight of the Directors in said Company through the Board of Internal Improvements, as provided in the charter of said Company and amendments thereto, which are attached to the complaint and made a part of this statement.

2. That the President and Directors of the Board of Internal Improvements were created a corporation by virtue of

Chapter 60, Section 3, and Chapter 61, of the Revised Code, and Chapter 38 of The Code of North Carolina.

3. That on the 8th day of March, 1897, the Governor of North Carolina appointed Charles A. Cook and J. C. L. Harris Commissioners, who, with the Governor, by the provisions of Section 1688 of The Code, constituted the Board of Internal Improvements from the date of the confirmation of their appointment by the Senate, and the said appointments were confirmed by the Senate on the 8th day of March, 1897, and commissions were issued to the said appointees on the 9th day of March, 1897.

4. That prior to the annual meeting of the stockholders of the Atlantic and North Carolina Railroad Company, in September, 1896, W. S. Chadwick and seven others were appointed, by the Board of Internal Improvements, Directors in said Company on the part of the State.

5. That on the 3d day of February, 1897, the General Assembly of North Carolina enacted Chapter 122 of the Laws of 1897, which is hereby referred to, and on March 18, 1897, the said Board of Internal Improvements removed said Chadwick and the seven other Directors, and appointed Robert Hancock and seven other Directors on the part of the State in said corporation, and the Board of Directors elected Robert Hancock President of the said Company, and the said Robert Hancock immediately thereafter went into possession of the office of President as aforesaid. And on the 17th day of February, 1898, the said Board of Internal Improvements removed said Robert Hancock from the Board of Directors of the said Railroad Company and the Directors of the said Railroad Company elected and appointed D. W. Patrick, one of the State Directors, President of the said Railroad Company, and the said Patrick at once went into the office of President.

6. That prior to the annual meeting of stockholders of said Company in September, 1898, the Board of Internal Improvements appointed D. W. Patrick and seven others State Directors in said Railroad Company, and the Directors of said Company thereupon elected D. W. Patrick President thereof as provided in the charter and by-laws of said Company. A copy of the by-laws is made a part of this statement.

7. That the General Assembly of North Carolina on the 6th day of March, 1899, passed an act entitled "An Act to Amend Chapter 122 of the Public Laws of 1897," a copy of which is hereto attached.

8. That on the 10th day of February, 1899, the General Assembly of North Carolina passed an act entitled "An Act to Amend Chapter 38 of The Code in regard to the Board of Internal Improvements," a copy of which is hereto attached, and the said General Assembly, on the 12th day of February, 1899, elected E. F. Lamb, J. W. Grainger, W. J. Adams, Armistead Jones, C. M. Parks, R. D. Caldwell, A. H. Boyden, Clement Manly and W. T. Lee a Board of Internal Improvements under the foregoing Act, and the said persons so elected met in pursuance of said Act on the 24th day of February, 1899, and proceeded to organize as the Board of Internal Improvements, and after organizing, passed the following resolutions or orders:

*Minutes.*

Pursuant to the Acts of the General Assembly of North Carolina, ratified on the 10th day of February, 1899, a meeting of the Board of Internal Improvements was held in the City of Raleigh on the 24th of February, 1899, at 12 o'clock m., in the office of Armistead Jones, Esq. Present:

E. F. Lamb, First Congressional District.

J. W. Grainger, Second Congressional District.

W. J. Adams, Third Congressional District.

Armistead Jones, Fourth Congressional District.

C. M. Parks, Fifth Congressional District.

R. D. Caldwell, Sixth Congressional District.

A. H. Boyden, Seventh Congressional District.

Clement Manly, Eighth Congressional District.

W. T. Lee, Ninth Congressional District.

The Board organized by electing Armistead Jones President, and E. F. Lamb Secretary.

On motion, it was ordered that George Green, proxy for the State of North Carolina of the Atlantic and North Carolina Railroad, be removed from his office as such proxy, and that the office be declared vacant, and H. P. Dortch was duly elected to fill said vacancy.

On motion, it was ordered that D. W. Patrick of Greene County, John W. Sutton of Lenoir County, S. S. Hoyt of Onslow County, H. F. Brown of Jones County, J. E. Person of Wayne County, W. P. Exum of Wayne County, W. H. Sawyer of Pamlico County, J. F. Mewborne of Lenoir County, Directors for the State of North Carolina of the Atlantic and North Carolina Railroad Company, be and are hereby removed from their said offices, and that the offices of the said Directors are hereby declared vacant; and the following be and are duly elected to fill said vacancies:

W. M. Webb, Cartaret County.

Jas. A. Bryan, Craven County.

L. Harvey, Lenoir County.

Samuel C. Sugg, Greene County.

T. C. Whitaker, Jones County.

Lewis C. Daniels, Pamlico County.

James Westbrook, Wayne County.

J. A. Meadows, Craven County.

It is further ordered that the President issue proper com-

missions to the said Board of Directors, the same being coun-
tersigned by the Secretary. On motion, it was ordered that
the President of this Board call upon the Governor of the
State, who was *ex officio* President of the old Board of Inter-
nal Improvements, and demand possession of all books,
records and papers of the Board of Internal Improvements.

On motion, it was ordered that the State's proxy and mem-
bers of the old Board of Directors of the Atlantic and North
Carolina Railroad Company, as above named, shall be offi-
cially notified of their removal from office, and after demand
is made and their refusal to the present Board of Directors
(elected this day) all the property, books, papers and records,
belonging to the Atlantic and North Carolina Railroad Com-
pany, the President of this board is empowered and directed
to proceed against all such Directors or other officers of the
said Railroad Company, as provided by law.

On motion, the Secretary was instructed to notify the new
Board of Directors of their election, and to instruct them
along with the private Directors of the said Atlantic and
North Carolina Railroad Company, to meet in Newbern on
Tuesday, February 28, 1899, for the purpose of immediate
organization.

ARMISTEAD JONES, <em>President.</em>

E. F. LAMB, *Secretary.*

9. That copies of said resolutions were served upon D. W.
Patrick and the other State Directors of the said Railroad
Company; and that on the 28th day of February, 1899, pur-
suant to notice, that said James A. Bryan, W. M. Webb, L.
Harvey, Samuel C. Sugg, T. C. Whitaker, Lewis G. Daniels,
James Westbrook and J. A. Meadows met at Newbern and
organized as the Board of Directors of the Atlantic and North
Carolina Railroad Company, and elected James A. Bryan
President of said Company.

10. That on the same day the said James A. Bryan and the parties named in the above Section, claiming to be President and Directors of the said Railroad Company, demanded of the said D. W. Patrick and the old Directors possession of the office of President and Directors, records and property of the said Railroad Company, and the said Patrick and the said old Directors declined to deliver the same, and are now in the full possession thereof, claiming to act as President and Directors of the said Railroad Company.

11. That Daniel L. Russell, Governor of North Carolina, as President *ex officio,* and Charles A. Cook and J. C. L. Harris, claiming to be Directors of the said Board of Internal Improvements, refuse to deliver up to the said Armistead Jones, etc., the office and records of the said Board of Internal Improvements, and are now in possession of the same, and claiming that they are entitled to act as said Board.

*Messrs. McRae & Day* and *Harris,* for defendants.
*Messrs. Simmons, Pou* and *Ward,* for plaintiff.

*Judgment.*

This cause coming on to be heard upon the complaint, answer and statement of facts agreed and being argued by counsel, it is thereupon ordered, adjudged and decreed by the Court, that the defendants, other than Duncan, are not entitled to the offices of President and Directors of the Atlantic and North Carolina Railroad Company; that the plaintiff relator James A. Bryan is the President and is entitled to exercise the duties of President and receive the emoluments as such of the said Company, and that the plaintiff relators, J. A. Bryan, W. M. Webb, L. Harvey, S. C. Sugg, T. C. Whitaker, L. G. Daniels, James Westbrook, J. A. Meadows, are the Directors on the part of the State in said Railroad

BRYAN v. PATRICK.

Company, and are entitled to exercise the powers of said offices; that the plaintiff relators be put in possession of said offices, and that defendants, other than Duncan, turn over the same to the said relator;. that plaintiffs recover of the defendants the records, books, money and all other property belonging to the Atlantic and North Carolina Railroad Company and the franchise of said Company, and also the costs of the action, to be taxed by the Clerk.

W. A. HOKE,
Judge Presiding.

.From which judgment the defendants appeal to the Supreme Court.

Messrs. J. C. L. Harris and McRae & Day, for appellants.
Messrs. Simmons, Pou & Ward, for appellees.

No. 1.

FAIRCLOTH, C. J., renders the opinion of the Court in this case and in the succeeding case No. 2, dependent upon the same facts agreed, the decision below being in favor of H. P. Dorth, the appointee of the new Internal Improvement Board.

MONTGOMERY, J., renders dissenting opinion.

CLARK, J., renders dissenting opinion.

FURCHES, J., renders concurring opinion.

FAIRCLOTH, C. J. This action is for the possession and control of the property of the Atlantic and North Carolina Railroad Company. From the agreed facts and admissions we are informed as follows: That said road was chartered in 1852, and said charter was amended in 1854-5, wherein it is provided that the State is entitled to eight directors and the private stockholders to four directors; also that the

124—42

Board of Inernal Improvements, consisting of the Governor and his two appointees, shall appoint the eight State directors; that said Board has continuously till the present time, annually, made such appointments; that said Board of Internal Improvements, of which the Governor is *ex officio* President, is to be appointed *biennially* with the advice of the Senate, and is a corporate body, Code, Section 1688; that said Board of Internal Improvements was appointed by the Governor and confirmed by the Senate on March 8, 1897, and their commissions were issued on March 9, 1897, for two years in the face of the commission; that defendant, Patrick, in September, 1898, was duly elected President of the road for the term of one year.

By an Act of the Assembly, ratified February 10, 1899, The Code, Section 1688, was declared repealed, and a substitute therefor was adopted, making the Board of Internal Improvements consist of nine members to be elected by the General Assembly on joint ballot, incorporating the same, and requiring it to meet on the 24th of February, 1899.

On February 12, 1899, the Legislature elected a new Board of Internal Improvements, who met and organized on February 24, 1899, and ordered that the State proxy and the Board of Directors (defendants) be removed from their offices, and that said offices be declared vacant, and elected the plaintiffs to fill said vacancies.

These new Directors met on February 28, 1899, and elected the plaintiff, Bryan, President of said Company, and on the same day demanded of the defendants possession of the property, etc., of the road, which was declined.

It will be observed that if defendants' office was for two years, it did not expire until March 9, 1899, and that plaintiffs' claim rests on legislation in February, 1899. The single question then is, Has the Legislature power to remove one from his office and confer it on another? The plaintiffs'

counsel in his well considered argument, insist that "To be appointed biennially" means that the appointment must be made every two years, but that it does not fix any term of office, if we understood him. Suppose that the Legislature enacts that an official Board (for it is not disputed that the members of the Board of Internal Improvements are officers) shall appoint A B *biennially* to perform the duties prescribed in the Act, it would fail to occur to intelligent minds that A B has an office between any two such appointments? The long recognition of such a conclusion would at least raise a doubt of the plaintiffs' construction. Do the duties of the Board cease as soon as it has made a biennial appointment? Suppose the State proxy or any State director should prove unfaithful to the State's interest in the railroad at any time during the two years, how would he be removed and his place be supplied except by the action of the Board? which it could not do according to the plaintiffs' contention. The Act of 1897, Ch. 122, Section 1, expressly requires the Board to remove for cause and fill the vacancy in such cases, and the Act ratified March 6, 1899, does not repeal said Section 1, but only amends it by eliminating the word "Governor" from the Board. It appears to this Court that "to be appointed *biennially*" *ex vi termini* implies a two years' term of office.

The simple question of the power of the General Assembly to remove a legal incumbent from his office and confer it on another has been so much discussed, decided and settled, that it seems to have become axiomatic. The law is a legal standard, based on experience in the past and established to avoid uncertainty, that it may be known of all men. Facts seldom repeat themselves exactly, but in different cases they approach each other so closely that they fall into the same class and are necessarily governed by the same legal standard.

This question of legislative power over the property of the citizen was presented to this Court in 1805, in the interesting case of the *University v. Foy,* 5 N. C., 58, (1 Murphy 58, 81). By the Act of 1789, the Legislature granted to the Trustees of the University all the property that has escheated, or should thereafter escheat to the State. The Act of 1800 repealed the Act of 1789, and declared that any property, real or personal, that had in the meanwhile escheated and was held by the University should revert to the State as the property of the same, as if the Act of 1789 had not been passed. In the meantime, valuable property in the Wilmington district had escheated, and was sued for by the University. The court, after elaborate consideration, held that the University should recover, and that the Act of 1800 was invalid as to that property. The opinion was so clear and strong that Mr. Webster, in his able argument in the famous case of Dartmouth College, cited and quoted from the opinion, and the Court he was addressing adopted the same principle that had been announced in the above case against Foy. Some modernized suggestions have been made against the Dartmouth College opinion, but none of them have offered any reason or cited any authority to support their suggestions—presumably for the reason that none were convenient.

In 1823 a similar question arose in *Hoke v. Henderson,* 15 N. C., 1. This referred to property in an office. It is now admitted that an office is property, and that it is protected by the rule which applies to property of a more tangible character. It was held that the Act, undertaking to deprive the legal incumbent of his office without his consent, was void. · It may not be amiss to remark here that the people of North Carolina, when assembled in convention, were desirous of having some rights secured to them beyond the con-

trol of the Legislature, and those they have expressed in their Bill of Rights and Constitution.

The principle involved in *Hoke v. Henderson* has been followed by a full list of decisions without exception to the present time. That principle is the basis of the recent decisions in *Wood v. Bellamy*, 120 N. C., 212, and *State Prison v. Day*, at the present term.

It has been suggested, further, not by the counsel, that if one Legislature can confer an office for two years and the officer can not be removed by the next Legislature without his consent otherwise than by abolishing the office, then it may confer an office for life, for 50 years, for 100 or 500 years. However logical such a proposition might be in a monarchial form of Government, it has no standing or logic under our Government. When our people were organizing a new State, they did not leave themselves to any more chance. They intended and did relieve themselves from burdensome fetters and trammels, and did whatever was necessary for their safety and to promote the general welfare. This reasoning is not a mere question of construction. · Passing by the unreasonableness of the proposition we are considering, we turn to positive law against it. It is declared in the Constitution, Article I, Section 7: "No man or set of men are entitled to exclusive or separate emoluments or privileges from the community, but in consideration of public services;" in Section 30: "No hereditary emolument, privileges or honors ought to be granted or conferred in this State;" and in Section 31: "Perpetuities and monopolies are contrary to the genius of a free State, and ought not to be allowed."

If, therefore, the apprehended danger should be attempted, which has not for a century, the fundamental provisions mentioned would prove efficient. Take for illustration, Section 14, of the same Article which forbids unusual punish-

ments, etc.   Bail may be required, fines imposed and punishments inflicted, but if they are excessive, unusual or grossly unreasonable, a remedy will be found under such provisions of the organic law.   It was found and promptly applied, for unusual punishment, in *State v. Driver,* 78 N. C., 423.

The truth is, under our system of government, with checks and balances in all the departments, the suggested danger is imaginary and may be dismissed.

The reasoning in the cases we have referred to on this subject has been so often stated and so often written, that there is no need to rewrite them in the present case.

"An office is a special rust or charge created by competent authority.   If not merely honorary, certain duties will be connected with it, the performance of which will be the consideration for its being conferred upon a particular individual, who for the time will be the officer."   *Troop v. Langdon,* 40 Mich., 673, (Cooley, J).

"The term embraces the ideas of tenure, duration, emolument and duties."   *United States v. Hartwell,* 6 Wall., 385, 393.

The taking of the oath of office is not an indispensable criterion, for the office may exist without it.   It is a mere incident and constitutes no part of the office.   *State v. Stanly,* 66 N. C., 59; *Comm. v. Evans,* 74 Penn. St., 124, 139 (Sharswood, J.).

"Like the requirement of an oath, the fact of the payment of a salary or fees may aid in determining the nature of the position, but it is not conclusive, for while a salary or fees are usually annexed to the office it is not necessarily so.   As in the case of the oath, the salary or fees are mere incidents, and form no part of the office."   *State v. Kennon,* 7 Ohio St., 716; *United States v. Hartwell,* 6 Wall., 385; *Howerton v. Tate,* 68 N. C., 547.

RAILROAD CO *v.* DORTCH.

The duties to be performed by an officer may be changed and reduced and thereby .the emoluments diminished, for in those respects he takes the office subject to the power of the Legislature to make such changes as the public good may require. *Bunting v. Gales,* 77 N. C., 283. We see now that the compensation may become very small, as the Legislature may deem proper for the public good, but the position still remains an office. Our opinion is that the plaintiffs are not entitled to recover for reasons stated in *Wood v. Bellamy,* and *State Prison v. Day, supra.*

Reversed.