### A. M. RIGGSBEE v. THE TOWN OF DURHAM.

*Constitutional Law—Public Schools—Taxation—Discrimination between the Races.*

1. A law which directs the tax raised from the polls and property of white persons to be devoted to sustaining schools for white persons, and that raised from the polls and property of negroes to be used for the support of their schools, is unconstitutional and void.

2. The collection of a tax will be restrained, when the purpose for which it is to be expended is unconstitutional.

3. While some provisions in a statute may be unconstitutional and void, others may remain and be enforced, but the rule does not apply, when the constitutional and unconstitutional parts of the statute are conducive to the same object, and the dislocation of the unconstitutional part would so affect its operation, that the act would fail in an essential part.

(*Puett* v. *Commissioners*, at this Term ; *Berry* v. *Haines*, 2 Car. L. Rep., 478 ; *Mc-Cubbins* v. *Barringer*, Phil., 554 ; *Johnson* v. *Winslow*. 63 N. C., 553, cited and approved).

Motion to continue a restraining order to the hearing, in a case pending in the Superior Court of DURHAM county, heard before *Clark, Judge,* at Chambers in Greensboro, on February 19, 1886.

At the session of 1881, the General Assembly passed an act "to establish a graded school in the town of Durham," chapter 231, the provisions of which, so far as they relate to the present controversy, are in substance these:

The first section directs the submission to the voters of the town, of the question whether an annual tax shall be levied for the support of a graded school in the town, and prescribes the mode in which the popular will shall be ascertained.

The second section, in case of an affirmative vote, authorizes the imposition and collection by the town authorities, of a tax upon property and polls, not exceeding one-fifth of one per cent. upon the value of the former, and seventy-five cents upon the latter, within the town and subject to taxation, the proceeds of which, it is declared, "shall be applied exclusively for the sup-

port of a 'graded public school' and shall not be expended for any other purpose."

Section three is in these words: "The special taxes thus levied and collected from the taxable property and polls of·white persons, shall be expended in keeping up a graded public school for persons of both sexes, between the ages of six and twenty-one years; and the special taxes thus levied and collected from the taxable property and polls of colored persons, shall be expended for the benefit of the colored schools for the colored children between the ages of six and twenty-one years."

The other sections of the Act, regulate the management of the school and the administration of the funds, and are not important in the present exigency. Nor is the principle involved, affected by the subsequent amendments. Acts 1883, chapter 377; Acts 1883, Private, chapter 106; Acts 1885, chapter 87, Private, An election was held, and a favorable vote taken, pursuant to which a graded school was set up for the education of white children only, to support which the taxes derived from white tax-payers were appropriated, while those from colored persons were distributed among the colored districts, which entered within the corporate limits of the town, in the general division of the county into separate school districts for the education of both classes of children. The county authorities accordingly fixed upon the maximum tax allowed by the enactment upon property, and upon sixty cents on the poll, preserving the constitutional equation between the two, which the act disregarded in imposing the limitations, and a tax list was made out and delivered to the town tax-collector, who was proceeding to levy and collect, when the present action was instituted by the issue of a summons against him and the other defendants, on the 13th day of February of the present year. The purpose of the suit, is to have a perpetual injunction against the enforcement of the tax, preliminary to the final hearing of which, the plaintiffs, upon·notice, applied to Clark, Judge, on the 18th day of the same month, for an intermediate restraining order to prevent the collection.

It was in evidence, in support of the plaintiff's motion, that there had been no graded school established in the town for colored children; that the town contains over two thousand inhabitants; that the territory embraced in the corporate limits of Durham, constitutes parts of three colored districts, into which the county is divided, and the school-houses in each are outside the town limits; that there are no school-houses therein for educating colored children, or into which they are allowed to enter; and that the taxes collected from that race, are distributed among the county colored districts, enuring as well to the benefit of colored children therein, who reside without, as to those who reside within the town. It was insisted for the plaintiff, that the Act, in its essential provisions and purposes, is in violation of the Constitutions of the United States and of this State, in making unwarranted distinctions between the white and colored races, and that it is inoperative and void.

The Court rendered judgment as follows:

· "This cause coming on to be heard, upon a motion by the plaintiff for an injunction, notice of motion having been duly served upon the defendants, and both parties being present, the complaint, (which is read as an affidavit,) and affidavit of plaintiff, and also affidavit of defendant being read, and it being agreed by both parties, that the statements in said complaint and affidavits shall be taken as facts admitted, (and they are found as facts by this Court,) and upon argument of counsel, the Court being of opinion:

1. That there is no irregularity or illegality in the mode of levying or collecting the tax complained of.

2. That clause 3 of the Act, (chapter 321, Acts of 1881), is unconstitutional and void, so far as it directs a discrimination between the races in the apportionment or appropriation of the fund raised by said tax.

3. That nothing in said Act, permits or authorizes the appropriation of the money raised by said tax, to the benefit of the public schools, or to any other purpose than for graded schools for the town of Durham.

It was ordered by the Court:

1. That upon the plaintiff's executing a bond in the sum of $100, conditioned as required by law, a notice shall be issued to the defendant, by the Clerk of the Superior Court of Durham, that they, their agents and attorneys, are enjoined and forbidden, till the further order of the Court, from appropriating any of the proceeds of said tax, for the use and benefit of any object, other than the graded school of the town of Durham; And they are further enjoined and forbidden in apportioning said fund, to make any discrimination on account of race, or to apportion it in any other manner than as provided by §2655 of The Code.

2. The motion for injunction against the levying and collecting of said tax is denied."

Messrs. *W. W. Fuller*, *John W. Graham* and *Thos. Ruffin*, for the plaintiffs.

Messrs. *John Manning*, *James S. Manning*, *J. A. Long* and *R. C. Strudwick*, for the defendant.

SMITH, C. J. (after stating the facts). We do not lay any stress upon the omission to designate the schools to which the money collected from colored tax-payers as "graded," as is done in directing the application of the money derived from white tax-payers, but it is quite manifest that the statute means to furnish the increased educational facilities, resulting from the local assessment to the children of both classes resident in that town, and to confine the benefits to them. The departure from this requirement in the distribution of the taxes drawn from colored persons, is, in our opinion, at variance with the language and intent of the enactment. Moreover, the sanction of the voters, on which its efficacy depended, was given to the Act in the form in which it came from the hands of the law-making power, and not as it was interpreted and acted on by those who are charged with the disbursement of the fund.

The Judge ruled that the third section of the Act, so far as it discriminates between the races in the apportionment of the fund, was repugnant to the constitution, and that it was not allowable to use it for any other than graded schools in Durham.   But he declared that there was no irregularity or illegality in the mode of levying and collecting the tax, and refused to issue a restraining order to this effect.   The ruling as to the discriminative features of the Act, is fully sustained by the decision of this Court in *Puett* v. *Commissioners*, reported at the present Term, and we do not propose to re-enter upon the discussion of the same matter in the present opinion.   If the only purposes for which the taxes are to be levied and used, are condemned by the paramount law of the Constitution, and they cannot, when collected, be expended as the statute directs, why should they be raised at all? The moneys thus obtained, are but the means by which some supposed or real useful end is to be obtained; and if the proposed expenditure is forbidden, so must be the provision for raising the money to be thus used.   The one is an inseparable incident of the other, and an essential and controlling element in the enactment.   It matters not however regular and free from objection may be the prescribed method of levying the taxes, if, when collected, those paid by one race are to be separated and applied exclusively to the schools in which the children of that race are taught, the same discrimination in the disposition of the fund is made, as if the taxes had been raised by separate and distinct assessments upon the races.   It is true, as was ruled by the Judge, the present assessment is uniform, and not obnoxious to one of the objections considered in the case referred to, but the essential objection remains, that there is "a discrimination in favor of, or to the prejudice of" one of the races.   Const. Art. 9, §2, which renders the enforcement of the tax for such purposes illegal.

The Judge held, that while the moneys could not be used in the manner pointed out and commanded in the statute, they could nevertheless be collected, acting upon the proposition, that while

some provisions of an enactment might be void, others might remain and be enforced. The proposition is correct to a limited extent, as decided in numerous cases: *Berry* v. *Haines*, 2 Car. L. Rep., 428 ; *McCubbins* v. *Barringer*, Phill. L., 554 ; *Johnson* v. *Winslow*, 63 N. C., 552.

But it is otherwise when the parts of the statute are so interlaced and dependent one on the other, as uniting and constituting the whole, necessarily conducive to one and the same object, so that the dislocation of the illegal part would so affect its operation, as that the act would fail of its essential object, and could not be supposed, in its mutilated form, to effect the end intended by the enacting power. When such relations exist among the parts, as that they make one consistent whole, and each material to the efficacy of the statute in subserving its general object, it must stand as a unity, or fail altogether.

Judge Cooley states the proposition to be, that the unconstitutional do not affect the constitutional parts of a statute, "unless all the provisions are connected in the subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed that the Legislature would have passed the one without the other." Const. Lim., 178, 215, with cases cited in notes 2 and 3.

Such is clearly the relation to each other of the several sections which constitute this enactment. The money is raised for a specific object—the maintenance of one or more graded schools within the limits of the town—and it comes, in addition to other public burdens, from the resident tax-payers and taxable property therein. The great bulk of it is appropriated to a graded school for white children, the residue to such a school for colored children. The fund is divided by race distinctions, depending on the source from which the moneys are derived. This, as the Judge decides, is forbidden by the constitution, and as the object in view cannot be accomplished by using the funds as directed, or for any other purpose under the statutory requirements, it

clearly ought not to be taken from the tax-payers at all, because this is but a means of effecting an illegal end. We do not advert to the actual misappropriation of the tax from the colored persons to county school districts, since this is the wrongful act of agents employed in disbursing it, and may be corrected without impairing the force of the enactment. But the statute itself directs an illegal and unauthorized disposition of the fund, and and this the popular vote approves, and therefore the restraining order ought to have issued upon the facts shown. In this refusal there is error. Let this be certified to the Court below.

Error.        -                    .                    Reversed.