D. E. WILLIAMS ET AL., SCHOOL COMMITTEE, v. D. B. BRADFORD.

(Filed 23 December, 1911.)

1. **Legislative Powers—School Districts—Bond Issues—Interpretation of Statutes—Constitutional Law.**

   In interpreting a statute with reference to its constitutionality, all doubts should be resolved in favor of its validity, and the courts will assume that the Legislature acted with integrity and with an honest purpose to observe the restrictions and limitations imposed by the Constitution.

2. **Same—Racial Discrimination—Unconstitutional Act—Rights of Purchaser.**

   An act of the Legislature which provides for the erection of a schoolhouse in a certain school district from the proceeds of a bond issue to be voted upon therein, "for the whites" in that district, violates the plain mandate of the Constitution, Art. IX, sec. 2, that "there shall be no discrimination in favor of, or to the prejudice of, either race," leaving nothing for interpretation, and a purchaser of these bonds, though issued according to all other legal requirements, may refuse to accept them on the ground of their being invalid. *Lowery v. School Trustees*, 140 N. C., 39; *Bonitz v. School Trustees*, 154 N. C., 379, where dis-

cretion was conferred upon the local board of administration to apportion the funds raised by the sale of the bonds without racial discrimination, cited and distinguished.

BROWN, J., dissenting.

APPEAL from *Cline, J.,* at Fall Term, 1911, of CAMDEN.

This case was heard in the court below upon the following case agreed:

Chapter 345, Private Laws of 1911, provides for the submitting to a vote of the people of the district the question of additional school tax, and the borrowing a sufficient amount to erect a building, not to exceed $5,000, "for the whites in the School District No. 19." The patrons of School District No. 19, as set out in said chapter, applied to the Board of County Commissioners of Camden County asking for an additional tax, as provided in said chapter, for the purpose of erecting a school building for the whites in said district. There was an election held and all requirements provided for in chapter 345 were carried out and complied with in every respect, and the majority of the qualified voters of said district voted for the additional school tax. The school committee contracted to erect a building to cost about $10,000, $5,000 of which was given by public subscription, and the committee issued bonds to the amount of $5,000 and advertised them for sale. The defendant, D. B. Bradford, was the highest bidder, at $1.01 and agreed to take the bonds at that price, but now refuses to accept them and pay the money for them, upon the ground that the committee had no right to issue them, for the reason that the act is unconstitutional and the bonds are not valid. Chapter 345 is made a part of this statement of the case. The above facts are submitted to the court for its opinion and judgment.

The court held the bonds to be invalid and that the defendant, therefore, is not required to accept them. Judgment was accordingly entered, and the plaintiffs excepted and appealed.

*E. F. Aydlett for plaintiff.*
*J. C. B. Ehringhaus for defendant.*

WALKER, J., after stating the facts: This case presents but a single question and one which we think, in view of recent decis-

ions of this Court, is not difficult of solution. Our Constitution, Art. IX, sec. 2, provides as follows: "The General Assembly, at its first session under this Constitution, shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all the children of the State between the ages of six and twenty-one years. And the children of the white race and the children of the colored race shall be taught in separate public schools; but there shall be no discrimination in favor of, or to the prejudice of, either race." There is nothing in the act to indicate that any discretion whatever is left with the local board of administration as to the apportionment of the fund which will be raised by a sale of the bonds among the two races without discrimination, as was the case in *Lowery v. School Trustees,* 140 N. C., 39, and *Bonitz v. School Trustees,* 154 N. C., 379. The provision of the act in regard to the application of the fund to be raised by taxation requires that it shall be applied to the erection of a school building for the white people, and is as mandatory in this respect as it could have been expressed.

Every presumption is to be indulged in favor of the validity of a statute, and all doubts should be resolved in support of it. We must always assume, when passing upon the constitutionality of a statute, that the Legislature acted with integrity and with an honest purpose to observe the restrictions and limitations imposed by law. 2 Lewis's Suth. Stat. Constr. (2 Ed.), sec. 82. It is also true that where a duty is imposed or a power conferred upon a public agency, the necessary implication is that the duty should be performed and the power exercised in the manner prescribed in the Constitution. With every disposition to uphold this act, and inclining most favorably to every reasonable construction of it which would execute the legislative will and at the same time conform to the mandate of the Constitution, we are unable to sustain it, but must declare it to be void, as being in direct conflict with the plain requirements of the fundamental law.

The act provides for only one thing, the levying of a tax for the purpose of erecting a school building "for the whites," and only for that purpose. The other provisions of the act relate to

the machinery for levying and collecting the tax, but the proceeds of such tax, when collected, are to be applied entirely to the purpose thus clearly indicated, and to no other. There is no room whatever for the exercise of any judgment or discretion by the local authorities themselves in the application or appropriation of the tax fund, according to the mandate of the Constitution, that is, without racial discrimination. In this respect, our case differs essentially from *Lowery v. School Trustees* and *Bonitz v. School Trustees,* already cited. In each of these cases there were expressions in the statute which this Court construed to mean that it was not the purpose to tax the people of the school district for the exclusive benefit of the one race or the other, and that while language was used which, if considered by itself, might lead to the conclusion that only one of the races was intended to receive the full and exclusive benefit of the tax, it was explained and its meaning so enlarged by other parts of the act as to avoid any discrimination between the races, and that, by a fair and reasonable construction of the whole act, reading and interpreting each provision with proper reference to the context, the true intent of the Legislature to apportion the fund between the two races fairly and reasonably and in accordance with the constitutional requirement, was made apparent.

When we bring this act to the test of our decision in *Bonitz v. School Trustees,* 154 N. C., 375, we can have no reasonable doubt as to its invalidity. *Justice Hoke* thus speaks for the entire Court in that case: "The Constitution of this State, Art. IX, sec. 2, in providing for a 'uniform system of public schools wherein tuition shall be free of charge to all the children of the State between the ages of six and twenty-one years,' contains the requirement, 'That the children of the white race and the children of the colored race shall be taught in separate schools,' and further, 'but there shall be no discrimination in favor of or to the prejudice of either race.' In numerous and well-considered decisions this Court has held that these provisions of our Constitution, in regard to the two races, are mandatory, and may be disregarded neither by Legislature nor by officials charged with the duty of administering a given law. *Smith v.*

*School Trustees,* 141 N. C., pp. 143-159; *Lowery v. School Trustees,* 140 N. C., 33; *Puitt v. Commissioners,* 94 N. C., 709; *Riggsbee v. Durham,* 94 N. C., 800. If, therefore, the act in question here, in designating a certain boundary as a 'school district for the white race,' can only be construed as requiring that the funds to be raised under its provisions should be applied exclusively to the white schools within such boundary and the additional facilities afforded only enjoyed by the white children attending such schools, it would be clearly unconstitutional."

The statute we now have under consideration manifestly falls under the condemnation of the law, as stated in that case, and, therefore, we are of the opinion that it is void, and so are the bonds which have been issued and sold under the supposed authority therein conferred.

This decision has nothing to do with the requirements of the Constitution that the two races shall be taught in separate schools. We will maintain that provision inviolate and in its full integrity. It is not a question in this case whether there shall be such a separation, but whether the Constitution shall be obeyed when it commands that there shall be no discrimination.

There was no error in the ruling of the court below, and we must affirm its judgment.

Affirmed.

BROWN, J., dissenting: The question presented by this appeal is the validity of the bonds issued under chapter 345, Private Laws of 1911. This act of the General Assembly provides for the levying of an annual tax for the purpose of building a school building for the whites, and authorizes borrowing the money necessary to construct such building and directs that the special annual tax be applied to the payment of such debt. It is very important to bear in mind that there is no tax levied or debt authorized to be contracted for the maintenance of any schools, white or colored.

Nor does the act provide for the building of a colored school-house, for none is needed. So far as the record shows, the colored race is already provided with a suitable and sufficient school building, but the whites are not.

This point has never before been decided in this State, and I think the Court has misapplied the former decisions of this Court. If the act provided for the levying of a special tax for the sole maintenance and support of the white schools to the exclusion of the colored, then I should say it discriminated against the colored race, and would be a violation of Art. IX, sec. 2, of our State Constitution.

This section reads as follows: "The General Assembly, at its first session under this Constitution, shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all the children of the State between the ages of six and twenty-one years. And the children of the white race and the children of the colored race shall be taught in separate public schools; but there shall be no discrimination in favor of or to the prejudice of either race." We find in this section the peremptory mandate of the Constitution that the children of the white race and the children of the colored race shall be taught in separate public schools.

How is this to be accomplished unless separate school buildings can be provided necessary for the accommodation of each race?

When the General Assembly is commanded to see to it that the two races are taught in separate public schools, it is certainly invested by necessary implication with the power to give effect to that command by providing for the erection of suitable buildings for each race.

It is not obliged to provide for buildings for each race at the same time and in the same enactment. It may provide for a building at one session for the white race and at its next session for the colored race, or the latter may be already provided for.

Certainly there is no discrimination apparent in the act, because a white school building is a constitutional necessity in which the colored race can have no share or interest.

It surely cannot be contended that every time a white schoolhouse is built a colored schoolhouse must also be erected, regardless of the needs of the two races. We have repeatedly affirmed the doctrine that "Courts will not adjudge an act of the Legis-

lature invalid unless its violation of the Constitution is clear, complete, and unmistakable." This is the language of Mr. Black quoted with approval in *Bonitz v. School Trustees,* 154 N. C., 379.

As the colored race in South Mills Township, Camden County, to which this act applies, is doubtless already provided with a school building suitable to its needs (no complaint is made that they are not), and as the white race evidently is not so provided, I think it was the duty of the General Assembly to provide for the erection of a suitable building. That is all that this legislation undertakes to do, and there is nothing discriminatory on its face. The fact that the Legislature did not provide the means in the same enactment for the erection at same time of a colored school building should be conclusive that none is needed for that race.