## STATE v. SAMUEL A. SMITH.

1. Special Courts for cities and towns are not put by the Constitution upon the same footing as the Court for the trial of impeachments, the Supreme Court, the Superior Courts and Courts of Justice of the Peace.
2. These latter Courts are established by the Constitution, and owe their existence to that instrument *alone*, and are in no wise dependent upon an act of the Legislature.
3. Special Courts for cities and towns are creatures of the legislative will and discretion, and owe their origin to the expression of such legislative will and discretion by constitutional permission.
4. Such discretion is not exhausted by an act erecting such Courts, but may be directed as well to their abolition.
5. The Judge of such a Court has not a "vested right" in his office within the meaning of the Constitution, as that principle only applies where the office remains.
6. The act of March 30, 1871, (act 1870–'71. ch. 160,) had the effect to abolish the office of Judge of the Special Court for the city of Wilmington. The cases of *Hoke* v. *Henderson*, 4 Dev. 1, and *Cotton* v. *Ellis*, 7 Jones 345, cited and approved, and distinguished from this case.

This was an appeal from the judgment of *Hon. Edward Cantwell*, professing to act therein as Judge of a Special Court for the city of Wilmington.

The defendant was tried by Edward Cantwell on the 12th day of June, 1871, on the charge of assault and battery, Mr Cantwell claiming to have the right to try him by virtue of of his office of Judge for the Special Court for the city of Wilmington. The transcript showed that the defendant by plea denied the jurisdiction and existence of said Court, and the office and power of Mr. Cantwell as asserted, but his plea was overruled, and after hearing evidence, he was found guilty of the charge and fined the sum of one dollar.

From this judgment the defendant appealed to this Court, and the only question presented for the consideration of this Court, was, whether the Legislature possessed the power

2

to abolish the Special Court for the city of Wilmington, and the office of Judge of said Court, which had been established by the act of February 3d, 1870, which it had professed to do by the Act of 3d March, 1871.

*Attorney General,* for the State.
No counsel for defendant.

PEARSON, C. J. This case was filed after *State* v. *Walker* had been decided. In that case a preliminary point excluded a decision of the question, whether the General Assembly, in 1870, had power to abolish the Special Court established in the city of Wilmington by the Act of 1868. In this case, a determination of the question becomes necessary for the purpose of this decision; and we must decide it in a collateral way, although it would have been more in accord with the course of the Court, to have had it presented directly, in a proceeding in the name of the Attorney General, in the nature of a *quo warranto* against his Honor Judge Cantwell, for usurping functions as Judge of a Special Court of the city of Wilmington, after the Act 30th March, 1871.

It is not true, as assumed by the learned argument of Judge Cantwell, that Special Courts in cities and towns are put by the Constitution on the same footing as the Court for the trial of impeachments, the Supreme Court, the Superior Courts and Courts of Justice of the Peace. The fallacy of his reasoning and his wrong conclusions grow out of this erroneous assumption. These judicial tribunals are established by the Constitution, owe their existence to that instrument alone, are in no wise dependent upon an act of the General Assembly, whereas in respect to Special Courts, the Constitution simply provides that the General Assembly shall establish such Courts in cities and towns, "*where the same may be necessary,*" leaving it for the General Assembly in its wisdom to decide upon the existence of the necessity both in regard to term and plan. So a

Special Court cannot be established in a city or town, without an act of the General Assembly, deciding upon the necessity for its establishment ; and as a thing of course, one session of the General Assembly has power to repeal an act passed at a former session.  The General Assembly, at its session in 1868, was of opinion, that a Special Court was necessary in the city of Wilmington.  If, at the session in 1871, in its judgment, such necessity no longer existed, the power to abolish the Court and repeal the act of 1868, seems to us to be too clear for discussion.  The question then is narrowed to a consideration of the legal effect of the repeal of the statute by which the Court was established.  If the effect be to abolish the Court, the incidental effect must be, that the incumbent of the office can no longer discharge the duties of a Judge, for there can be no officer where there is no office.

It is said a thing which has been done under a statute, cannot be undone by its repeal, and as a Judge of the Special Court in Wilmington, had been inducted into office before the repeal of the statute, he has a " vested right " to continue in the office, until the term prescribed shall expire, whatever effect the repeal of the statute may have upon the future.

For this position *Cotton* v. *Ellis*, 7 Jones 345, is relied on. The office of Adjutant General was created by an act of Congress in pursuance of the Constitution of the United States, but the appointment of the officer is reserved to the State.  The General Assembly in 1856, conferred the power of appointing an Adjutant General, to continue in office for three years, upon the Governor.  Cotton was appointed under this act.  In 1858, the act of 1856, was repealed.  It is held that Cotton was entitled to fill the office until the term of three years expired, on the ground, that as the office was not abolished, he had a " vested right," " a property in the office," which could not be disturbed as long as the office existed, according to the doctrine settled by *Hoke* v. *Henderson*, 4 Dev. 1.

In both of these cases the office continued to exist and the

question involved simply the power of a motion from the officer. But in the case now before us—the office is abolished.

This point makes a most material difference for *Cotton* v. *Ellis*, and *Hoke* v. *Henderson*, can only be applicable, upon the idea, that to save the right of the incumbent the office should be continued after it has been abolished, whereas it is settled, that the incumbent goes out with the office, and all offices are accepted with the implied condition, that the term of the incumbent is to end should the office be abolished, so as not to cramp Legislative discretion in regard to the continuation of public offices. In short the whole question depends upon the power of the General Assembly to abolish the office of Special Court in the city of Wilmington, either directly, or by repealing the act creating it. This has been already disposed of.

There is error. This opinion will be certified, to the end that the defendant may be discharged.

PER CURIAM.                                    · Reversed.