## No. 2.

### ATLANTIC & N. C. RAILROAD CO., Appellant. v. H. P. DORTCH, et al.

*MacRae & Day* and *J. C. L. Harris,* for appellant.
*Simmons, Pou & Ward,* for appellee.

FAIRCLOTH, C. J. The facts here are the same as in *Bryan v. Patrick,* at this term. The defendant was elected State's proxy by the new Board in February, 1899. This action is brought to restrain him from attempting to represent the State in the stockholders' meetings or interfering with the present State's proxy in any manner.

In *Bryan v. Patrick* we have held that the new Board was without authority to act in the premises and could not legally elect the defendants.

Reversed.

MONTGOMERY, J., dissenting. I have given to the questions involved herein a most thorough investigation and the

best thought that I am capable of bestowing on them, and in the end am compelled to dissent from the opinion of the majority of the Court. I do so, however, with the utmost respect for the opinions of my brethren of the majority, for I know they have conscientiously and laboriously striven to arrive at a correct conclusion as to the law of the case.

The main contention of the defendants is that the old Board of Internal Improvements, consisting of the Governor and two Commissioners, C. A. Cook and J. C. L. Harris, commenced a term of office of two years from the 8th of March, 1897; that the members of the old Board were public officers, and therefore that the action of the new Board in undertaking to remove the old Board on the 24th of February, 1899, and before the expiration of the term of office of the old Board, was invalid, because it deprived them of their vested rights of property in their office. The cases of *Hoke v. Henderson,* 15 N. C., 1; *Wood v. Bellamy,* 120 N. C., 212, and *State Prison v. Day,* at this term of the Court, were relied on for their position.

I am of the opinion that there is a clear and well defined distinction between the character and nature of the offices which are here the subject of dispute and those offices which the Court were considering in the cases above mentioned. The office concerning which the litigation occurred in the case of *Hoke v. Henderson, supra,* was that of Clerk of the Superior Court of Lincoln County. The duties of that office required the continuous services of the incumbent, and the fees and perquisites were the consideration for which he gave his time and services. The office was one of profit, for the fees were naturally more to be considered when taken in connection with the duties of the office than the honor attached to the place. The Court in that case said, "He (the Clerk) is not merely a public servant and political agent. If he were and

RAILROAD CO. *v.* DORTCH.

had no interest of his own he might be discharged at pleasure. The distinction between agencies of the two kinds is obvious. The one is for the public use exclusively, and is often neither lucrative nor honorary, but onerous.     To be deprived of such an office is often a relief, and never can be an injury.     The other is for the public service conjointly with a benefit to the officer.     To be deprived in this last case is a loss to the officer."     The kind of office which the Court had in view in that case is further illustrated in the opinion, where it is said: "The office is created for public purposes, but it is conferred on a particular man, and accepted by him as a source of individual emolument.     To the extent of that emolument it is private property."     It is true, as was said in *State Prison v. Day, supra,* "The duties of the office are of the first consequence, and the agency from the State to perform those duties is the next step in the creation of an office.     It is the union of the two factors, duty and agency, which makes the office; but that which practically makes the office property is the emoluments."

Now to apply the above tests to the offices which are in controversy in this action:     By statute the compensation of each member of the Board of Internal Improvements is fixed at $3 per day for the time he may be employed in the public service, and his traveling expenses.     On the very face of the law it is apparent that the office is purely honorary, there being no salary or fees attached or allowed except as a reimbursement for actual expenses incurred by the officer for the public benefit, the mileage and per diem being on the face only sufficient for that purpose.     There can be no profit or emoluments in such an office; its duties are mostly supervisory, and the members act not for their personal gain or profit, but for the public welfare entirely.     In the appointments the Board may make and in the exercise of the powers conferred on

them by law, they are required, by both a sense of duty and by a clear inference from their oaths of office, not to receive any private advantage therefrom, but in all things to do their duty without reward or the hope of reward, or any private motive whatsoever. Can it be said then that such an office as that filled by a member of the Board of Internal Improvements is property in the incumbent, and that the incumbent would be injured by the transfer of such an office to another on the ground that his property had been taken from him by law and given to another? Truly it would seem that such an office, while honorary, would be onerous. It certainly is not a lucrative office.

My conclusion on that question then is that while the members of the Board of Internal Improvements are public officers, yet the offices are not lucrative ones; that they therefore can be transferred to others at any time, regardless of the term of office, without a violation of any of the rules governing property; and that the appointment or election by the General Assembly, at its session of 1899, of the plaintiffs as members of the new Board of Internal Improvements was regular and valid.

In reference to the questions whether or not the offices of President and Directors of the Atlantic and North Carolina Railroad Company are public offices, I have arrived at the conclusion that they are not. They are in no sense such officers as are the presiding officers of the several asylums and the penitentiary. Those institutions are "a part of the Government and part of the State polity;" while the President and Directors of the Atlantic and North Carolina Railroad Company are only officers in a corporation chartered by the State, and in which the State has a large interest. That corporation is simply a business enterprise in which the State is interested pecuniarily. When the State became

a stockholder, it laid aside its character as sovereign, and made itself equal and only equal with the individual stockholders.    The President and Directors are merely the agents —the employees of the State, and are removable at the will of the State in any manner the State may choose to exercise that right, with or without an assigned cause.    The amended charter of the corporation gives that power to the Board of Internal Improvements, and Chapter 122, of the Acts of 1897, is not restrictive of that power, but only conferred on the Governor and the Board the power to remove for cause whenever the *Governor* becomes satisfied that such removal should be made.    That Act is now amended so as to deprive the Governor of all power in the matter.

I am not inadvertent to the fact that in *Eliason v. Coleman,* 86 N. C., 235, the Court, in giving example of such officers as had been declared public officers, mentioned that of the President of the Western North Carolina Railroad Company, who had been elected through the directors of the State.    But the Court in the last named case mentioned as the reason for including that officer amongst public officers that the Court had sustained an action by that officer—Howerton, in *Howerton v. Pate,* 68 N. C., 548.    Upon an examination of the last mentioned case, it will be seen that the Court did not decide that question, and, in touching upon it, it seems that the case was decided more upon the weakness of the defendant's title than upon the strength of the plaintiff's. The Court said: "Admit for the sake of the argument that directors in a Railroad Company are not officers in the strict meaning of that term, but only officers in a corporation in which the State has a large interest, still the reason of the rule in *Clark v. Stanley,* 66 N. C., 59, applies and destroys the foundation upon which the defendants have built."

The defendants there, were claiming under legislative

appointment and the plaintiffs under the appointment of the Executive. The plaintiffs in this action, although they are not public officers, can yet maintain the action by a statute permitting it—Subsection 1, of Section 607, of The Code. I think the judgment below should be affirmed.

CLARK, J., dissenting. About two-thirds of the capital stock of the Atlantic and North Carolina Railroad Company is owned by the State of North Carolina, and the amendment to its charter enacted in 1854-5, provides (Section 4) that the stockholders shall elect four directors, and the other eight of its twelve directors shall be appointed annually and be removable by the Board of Internal Improvements. The Code, Section 1688, provides that the Board of Internal Improvements shall consist of the Governor *ex officio,* and "of two commissioners to be appointed biennially by the Governor, with the advice of the Senate, any two of whom shall constitute a board for the transaction of business, and in case of vacancies occurring in the Board, the same shall be filled by the other members." The General Assembly by an Act ratified on the 10th of February, 1899, repealed the above Section 1688, of The Code, and substituted for it an enactment that the Board of Internal Improvements shall consist of nine members, one from each Congressional District, to be elected by the General Assembly. On February 12th the new Board of Internal Improvements were thus elected, they met on February 24th, and by virtue of the aforesaid provision in the charter removed the eight State Directors, thus removing also the President, as the charter requires that he be a director, and appointed eight others as Directors, who met on February 28th, with two of the Directors elected by the stockholders, and chose one of their number President. These are the plaintiffs in this action, and the defendants are

RAILROAD CO. *v.* DORTCH.

the eight State Directors appointed by the former Board of Internal Improvements, together with one of the directors elected by the stockholders, who adheres to them. This action is for possession and control of said railroad, and for the offices of President and Directors, which the defendants refuse to surrender.

It is conceded, and indeed is beyond controversy, that the Legislature could repeal Section 1688 of The Code, and abolish the former Board of Internal Improvements, and that, being legislative offices the General Assembly, by virtue of the constitutional amendment of 1875, can elect the new Board of Internal Improvements itself. *Ewart v. Jones,* 116 N. C., 570.

But it is contended that the old Board of Internal Improvements having been appointed on March 8, 1897, under an Act providing for their appointment "biennially," could not be replaced by a new Board till after March 8, 1899, and therefore the removal of the eight State directors and the appointment of eight others in their stead by the new Board on February 24, 1899, is null and of no effect, and for that the defendants rely upon *Hoke v. Henderson,* 15 N. C., 1, (decided in 1833). That decision holds that while the Legislature can abolish any office whose term is not fixed by the Constitution, it can not change the occupants of the office if the office is not abolished, provided it is an office with pay. But it also holds that if no pay is attached, the Legislature can change the officer without abolishing the office (p. 21), for the reason therein given, that where there is any pay attached the officer has a private interest in such office "to the extent of his emoluments" (p. 18), and his right thereto is property of which he can not be deprived unless the office is abolished.

Now, under Section 1688, the Governor serves *ex officio,* and without compensation, on the Board of Internal Improve-

ments; it is no part of his duty as Governor conferred on him by the Constitution, but is simply an honorary appointment conferred on him by legislative enactment, and therefore under "*Hoke v. Henderson*" it is clear such duty can be taken from him, not only by abolishing the office of director of Internal Improvements, but by legislative enactment even when the office is continued. But the other two directors get three dollars for each day they were in session, and as it apears from the Auditor's reports (of which official statements made by authority of law, the Courts take judicial notice), that this Board sits on an average only one or sometimes two days per year, and has therefore a salary of $3 per year, or at the most $6 per year, it is claimed that the Legislature was powerless to abolish the old Board and substitute a new Board of nine elected by themselves, to take charge of this great property of the State, till after the term of the two old directors had expired. It is extremely improbable that the old Board would have held another meeting before March 8th, or that they have lost one cent of emolument, which alone *Hoke v. Henderson* protects, yet for that possibility of that infinitessimal salary we are asked to set aside a solemn Act of the Legislature in providing for the management of a great State property. It is true that if the salary and not the public interest is the test, a small salary is as sacred as a large one, but this emphasizes the logical result of the doctrine that the salary of the officer takes precedence of the right of the people to change the control of their State institutions.

'Let us look this proposition squarely in the face: The statute (Code, Section 1688) directed the appointment of these two directors *biennially,* conferred on the Board the power to fill up vacancies occurring in their own body, and to appoint the Directors (Section 1718) for the State in all

corporations in which the State shall hold stock, and "shall have charge of all the State's interest in all railroads, canals and other works of internal improvements, and also all public buildings which are the property of the State." The charter of the Atlantic and North Carolina Railroad Company also provides that the eight directors on the part of the State shall be appointed by the Board of Internal Improvements. Now, if by reason of their receipt of compensation, averaging three dollars per year, the Directors of the Board of Internal Improvements are beyond legislative change until after the lapse of their term of two years, then if the Legislature had written in the Act "fifty years" instead of "biennial" as the term of office, inasmuch as a part of their office is to fill up vacancies in their own body from time to time, and the appointment of Directors for the State by them is provided in the charter of the Railroad Company, it follows that for fifty years a self perpetuating body could control this great work in which the people of the State have invested $2,000,000, and no Legislature for 50 years could in any way control the State's interest therein because the members of said Board of Internal Improvements have $3 a year salary, and hence have a "property" in their offices, though it would be entirely otherwise and the incumbents of the office could be changed at the will of the Legislature, if this onerous duty (usually one day's session per year) had been devolved upon its members without pay.

If this is a correct interpretation of *"Hoke v. Henderson"* the absurdity of that decision is so palpable, and its direct conflict with provisions of both State and Federal Constitutions is so clear that it should no be deemed authority for a moment, yet it is upon this construction, with its inevitable *reductio ad absurdam* that rests the right of the defendants to set at defiance the will of the people, as expressed by their

chosen representatives, in reference to the management of a property in which, as appears from the record, the State has invested $2,000,000. The $2,000,000 the people have invested in the property is outweighed by the $3 per year which two officeholders have been receiving, and of which "property" it is said they must not be deprived!

It is clear that if a biennial office can keep the people from touching the management of the property for two years, an office for 100 years, with power given the Board of Internal Improvements in Section 1688 of filling vacancies in their own body, would deprive the people from taking the management into their own hands for one hundred years.

Once concede that a Legislature by giving a term of two years or four years to officers put in charge of State property or State institutions can deprive the State of taking charge again by an Act of the next Legislature then it can deprive not only the next Legislature, but the next ten Legislatures or the next fifty Legislatures from doing so. It is suggested that the Constitution forbids perpetuities and hereditary offices, but an office for 20 years or for 50 years (with power given the Board by Section 1688 of filling its own vacancies) is not hereditary, nor is it a perpetuity especially when almost every charter is for 99 years. Besides where is the constitutional provision giving the Court power to prescribe the number of years which the Legislature must not exceed in fixing the term of an office? Or the Legislature might simply fill the offices "for life," as was the case with the defendant in *Hoke v. Henderson,* and for the life time certainly of the office holders (if any salary, if only $3 a year, is attached) the State will be powerless to resume control of its own property and its own institutions. The taxpayers can have the privilege of paying the expenses, but a temporary Legislature elected to sit for 60 days can appoint office holders, who, as long as they live

RAILROAD CO. *v.* DORTCH.

must control the State's institutions on the ground (not to be found in the Constitution) that the right of an office holder to his salary is a contract, and that the State can not abolish his office or get rid of him unless it permanently abolishes the institution to which the office is attached or at least does not re-create it, or one similar to it, at the same session.   *Wilson v. Jordan,* at this term.

But *Hoke v. Henderson* does not justly bear the construction placed upon it by the defendants.   That case was decided in 1833 not very long after the Dartmouth College case had held that a charter of a corporation was not a privilege but a contract, and if granted by one Legislature could not be repealed by another.   The irretrievable ruin that would have been wrought by that decision if allowed full sway had not then been perceived.   North Carolina had not then been roused to protect herself from it, as she has since done by inserting in her Constitution Article VIII, Section 1, that all charters may be altered from time to time or repealed, by the Legislature—a course which other States have pursued. Henderson was Clerk of the Superior Court, and held for life.

All the Courts were at that time of legislative creation, and though the terms of the Judges, unlike Henderson's, were prescribed by the Constitution to be for life, it seemed to the Court bad public policy, as indicated in their opinion, that the Legislature should put another person in Henderson's life office, without abolishing his office.   This is said without reflecting in the remotest degree upon the members of that distinguished Court, but to call attention to the different standpoint as to public policy which they occupied at a time when even the Courts were of legislative origin and without the present constitutional guarantees.

The Court, under such circumstances, held that an office created by legislative enactment is not a public agency, revoca-

124—43

ble at will of the power creating it (as is held everywhere else) but that it was a contract, and therefore property to the extent of the salary, for it is expressly held that if no salary is attached the office can be transferred by the Legislature to another. Indeed on page 18 it is said "to the extent of the emolument it is private property." And on page 22 it is said that "the transfer of the emoluments" is the loss or injury sustained by the officer. These are not mere disconnected expressions, but the very basis upon which the opinion rests. Though the Court held that it is property it is a singular kind of property, for it further held that the Legislature could abolish it, that the Legislature could at will increase or diminish the duties or reduce its compensation (so it did not starve the incumbent out), that though property, its holder could not sell it or assign it—very singular attributes for property. Another striking feature of the decision is that the Court intimates that the proper tenure of office is for life, giving as a reason (p. 23) that if an office is conferred for an absolute term of years, upon the death of an incumbent during his term his office would go to his executors or administrator, "and an incompetent person might be introduced into it." A decision with these features can not be held entirely sacred or flawless. Nowhere else has it ever been held by any Court in any country, at any time, that there was or could be private property in a public office which is created *pro commodo populi*—for public, not private, benefit, Black Const. Pro., Section 95, and cases there cited. The Court rested its ruling to that effect in *Hoke v. Henderson* upon the ground that there is a contract with the office holder for his salary, since it expressly excludes offices without salary. Since then the foundation of the decision is the contract for the salary, it necessarily follows that the true construction of *Hoke v. Henderson,* is that if the officer is removed without abolishing his

office, his grievance is for breach of the contract for "the transfer of the emoluments" as is expressly said (p. 22), and as by virtue of the XI Amendment to the Constitution of the United States, the State can not be sued and forced to perform any contract whatsover, the office holder has his sole remedy by petition in the Supreme Court under Article IV, Section 9, of the Constitution of North Carolina. The only property of which the defendant could be deprived (since the decision held that it did not apply to offices without a salary) is the contract of the State to pay a salary and to grant a mandamus against the State to restore the officer that he may draw his salary would be to do by indirection what the Court can not do directly, to-wit: give the removed office holder judgment against the State for the emoluments of the office. When the term of office is fixed by the Constitution the Legislature can not interfere with it, not because it is property, not because there is any contract by the State, to pay the salary, but because by the organic law the Legislature is disabled from legislating in regard to it, there is that express limitation put upon its power, not by any judicial construction, but by the will of the sovereign people. Constitutional offices are mere public agencies like all others, but they are made irrevocable by the Legislature. They can be and have been revoked by the people in Convention as in this State in 1868. In a Republic every office holder from the highest to the lowest is strictly and truly a mere *public servant.*

There is this striking difference between *Hoke v. Henderson* and cases like the present, and *State Prison v. Day* (at this term), which has not heretofore been mentioned. In Hoke v. Henderson, the defendant was Clerk of the Superior Court. He received no pay from the State, and his only emoluments were fees from individuals for services to be rendered in his office, and the Court may have thought that the

only way to get them was for him to remain in office. But in cases like the present and the Day case, the salary comes entirely from the State, and to put the officer back after the State, though the Legislature has passed an act which removes him, is in effect an action against the State to compel the State to pay him a salary, and for the Courts (as said above), to do by indirection what they are forbidden to do directly. Henderson's was a county office, and counties can be sued.

The officers removed in this case and in the Day case are State officers, and to reinstate them is in effect a judgment against the State, which no court has power to render.

In *Caldwell v. Wilson,* 121 N..C., at page 468, Mr. Justice DOUGLAS calls a halt as to the extension of *Hoke v. Henderson,* and well says the varied and extraordinary claims made thereunder and the fact that we are the only State in the Union recognizing the doctrine, may well cause us to pause and consider if we have not carried it to its fullest legitimate extent. If this is to remain a government "of the people and for the people," it must continue to be a government "by the people," and it is of the last, of the highest and most solemn importance that the will of the people as to governmental matters shall be expressed by their representatives in the law-making department of the government, and that when so expressed, the action of the Legislature shall be subject to review in every instance and in all mattters by the people themselves through the next or any succeeding Legislature, and no Legislature can postpone that review of their conduct by filling an office (or doing any other act), for a term that is fixed beyond change by the succeeding Legislature. The Constitution alone can place limits upon legislative power. The Constitution nowhere restricts the power of a Legislature to review, repeal or change the action of any preceding Legislature in any particular. When *Chisholm v. Georgia* seemed to do so as to State indebtedness, the

Eleventh Amendment to the United States Constitution set the people free; and when the Dartmouth College case limited legislative power as to corporations, the new provision in the State Constitution (Article VIII, Sec. 1), removed the restriction as to all charters granted since its adoption, and if a construction can be placed upon *"Hoke v. Henderson,"* which will limit the freedom of each Legislature to review, repeal or change any action of a preceding Legislature because it may interfere with the salary of an office created by legislative enactment, then either that construction should be rejected or the decision itself overruled, as has been the fate of many another. *Hoke v. Henderson* is no more sacred than any other decision. The sacredness is in preserving to the people the fullest liberty in legislating in regard to the institutions and the property of the State, and in all matters which can come within the law-making power of a free people, and in always maintaining the right of the people to pass upon the action of their representatives through the next or any succeeding Legislature.

The $3 per year paid two of the members of the Board of Internal Improvements can not have the effect to prohibit the State from abolishing the Board and creating a new Board of nine members to take charge of its investment of two million dollars in the Atlantic and North Carolina Railroad whenever the Legislature may see fit. It did see fit to do so on February 10, 1899, and I can find no authority conferred on this Court to set aside and declare null that action of the General Assembly.

FURCHES, J., concurring. In considering this case in conference, the discussion took a much wider range than that taken by counsel who argued the case. I shall be compelled to notice some of the matters thus called to our attention, which seem to have influenced a part of the Court, in order that I

may answer them, if I can. And I do not mean by this, that I propose, in this concurring opinion to notice all the arguments advanced by my dissenting brethren; many of them to my mind, were too discursive and too speculative in their character, to be answered, or to require an answer. Many of them are statements as to facts that do not appear from the record, and it seems to me were not proper to be considered in determining a purely legal question. For instance, it was stated that the State's interest in the Atlantic and North Carolina Railroad Company is worth $2,000,000. This does not appear in the record, and I don't know what it is worth. But I see from a published statement made by Treasurer Worth on the 27th of April, 1899, that it is worth $253,320. I do not see what difference it makes in deciding the question of law involved in this case, whether it is worth $2,000,000 or $253,320.

It was stated that the Board of Internal Improvements had only drawn $3 each for the years 1897 and 1898. This does not appear in the record, and upon what authority it was stated I do not know; but whether it was true or not, it seems to me, to be a matter that we cannot consider, as it does not appear in the record. And if it did appear in the record, it could not influence my opinion upon the question of law involved in the case.

The law as it stood before February, 1899, created a "Board of Internal Improvements," who held their offices from the 8th of March, 1897, for a term of two years. This Board appointed eight directors for the State in the Atlantic and North Carolina Railroad Company, as it was their duty to do, and the defendants were elected by these directors and other directors, elected by the private stockholders of the road.

The Legislature on the 10th of February, 1899, repealed section 1688 of The Code and re-enacted the same, by giv-

ing themselves the power to elect the Board of Internal Improvements, which they proceeded to do. The Board elected by the Legislature met and organized on the 24th day of February, 1899, and proceeded to remove the State's proxy and the old Board of Directors from office and to elect a new Board of Directors. This new Board demanded possession of the road, which was refused, and this action was brought.

If the new Board had the right to remove the old Board and appoint directors on the 24th of February, 1899, the plaintiffs are entitled to recover, and if they did not, they are not entitled to recover.

It seems to me that the doctrine upon which the case depends has been settled by *Hoke v. Henderson,* 15 N. C., 1; *Wood v. Bellamy,* 120 N. C., 212; *Penitentiary v. Day,* at this term, *Wilson v. Jordan,* at this term, and many other cases. I know that *Hoke v. Henderson* is fiercely attacked by one member of the Court, and it is even intimated that this opinion, delivered by Chief Justice Ruffin, Judges Gaston and Daniel, was given under fear that they might lose their offices, if they should hold that the Legislature could remove an officer before his term expired. I suppose if there ever were three judges on the Supreme Court Bench of North Carolina who live and still live in the hearts of the people and of the legal profession, they were Ruffin, Gaston and Daniel; and I must be pardoned for saying that I regret that any such reason as this should have been assigned for the decision in that case by any successor of theirs.

But it is further said that these offices were not lucrative, and the small amount of pay received for their services is ridiculed, and it is contended that *Hoke v. Henderson* only applies to lucative offices. The same question was pre-

sented by the facts in *Wood v. Bellamy*, but it was not even insisted on in the argument, nor was it discussed by the Court rendering the opinion, which was concurred in by the whole Court, constituted then as it is now. Nor was this fact (the smallness of the pay the Board received for their services) insisted upon by the learned counsel for the plaintiff on the argument of this case. I do not mention this with the view of insisting that this Court should not consider a question of law plainly presented by the record, though it may have been overlooked by the ablest counsel; but it seems to me that the Court ought not to go outside of the record to find facts to enable it to present a question not insisted on by the learned counsel who argued the case. The Court can not afford to make itself their attorney in the matter. But suppose it were true (which is not admitted) that the members of the Board of Internal Improvements have only drawn $6 each for 1897 and 1898, is this to be used against them and they to be turned out of office on that account? If so, it would have probably been better for them if they had put their hands deeper into the public treasury. I can not agree to such a proposition; and while I do not agree to the proposition that there is nothing in a public office but the number of pennies it may put in the pocket of the officer, still, if it is treated on this low plain, I propose to show that this digression from the record does not help plaintiff's case. I expect to show this from general principles and also from the case of *Hoke v. Henderson*.

It seems to me that it should be conceded by this time that a public office is property in North Carolina and is held by the officer as by contract. To dispute this would be to dispute not only *Hoke v. Henderson*, but every case ever decided by this Court involving the question, including *Wood v. Bellamy*. If it is treated simply as a contract—as a

RAILROAD CO. *v.* DORTCH.

horse trade—depending on a pecuniary consideration, three dollars would be as effective, in the absence of fraud, as three hundred dollars would be. This proposition, it seems to me, will not be disputed by any good lawyer. Then putting the rights of defendants upon no higher ground than that of contract, it seems to me that plaintiffs must fail in this action.

But I said that I did not agree to the proposition, that there was nothing in a public office except the number of pennies it might produce; and that I expected to show that it was not so considered by the Court in *Hoke v. Henderson.* It may be that sentences may be found in the opinion which considered disconnectedly, seem to sustain such proposition; but when it is all read and considered together, in my opinion it does not. Quoting from pages 22 and 23 of that opinion, it does not. Quoting from pages 22 and 23 of that opinion, it says: "For the term for which the law assures the office to him, he claims and can claim to continue to be the agent of the public, to discharge the duties of the place, while there are duties remaining to be discharged, and he is ready and willing to perform them. Certainly that is not introduced solely for the benefit of the person holding those offices, but upon the great public consideration that he who is to decide controversies between the powerful and the poor, and especially between the government and an individual, should be independent, in the tenure of his office, of all control and influence which might impair his impartiality, whether such control be essayed through the frowns of a bad man or through the adulation of an artful one, or such influence be produced by the threats of the government to visit nonconformity to their will, by depriving him of office, or rendering it no longer a means of livelihood." Again, on page 24, when speaking of the term of office, it is said: "When they did so (fixed the term), it was quite within their competency to alter it subsequently. But such alterations must operate pros-

RAILROAD CO. *v.* DORTCH.

pectively, and as regulations for future appointments and future enjoyment. As to those to whom the grant was made for life, an estate, a property vested, which can not be divested without default or crime."

Again, speaking of offices where the term is not fixed by the Constitution, it is said that it was strongly urged in the argument that as the Legislature had the right to fix the term of office, the officer took it with knowledge of that power and subject to the same. The opinion admits the fact that the Legislature could fix the term of such officers, but denies the conclusion of law, and says: "The question is, what is the effect of a grant for a particular period? Can the duration be afterwards lessened to the prejudice of a grantee? We think not; because he acquires a property."

But I will not quote further from this great opinion, as I think what I have quoted establishes the proposition that a public office is property, and that the officer holding the same has a property therein.

I am therefore of the opinion that the Board of Internal Improvements could not be removed by Legislation until their terms of office expired; that the new Board had no power to remove them, and no power to appoint the new directors (the plaintiffs) until after the 8th of March, 1899.