R. T. CLAYWELL ET AL. v. BOARD OF COMMISSIONERS OF BURKE
COUNTY ET AL.

(Filed 16 May, 1917.)

**1. Legislature—Constitutional Law—Statutes—Amendments—Bonds.**

A material amendment made by one branch of the Legislature to a bill
passed by the other, allowing a county to pledge its credit in issuing
bonds for the improvement of the highways therein, must be concurred
in according to the requirements of Article II, sec. 14, of our Constitu-
tion, providing that it be read upon three separate days, with the roll
call upon the second and third readings, for the act to be valid.

**2. Same—Dependent Parts—Unconstitutional in Whole—Roads and High-
ways.**

Where a bill is introduced in one branch of the Legislature to coördi-
nate the road system, which provides for the issuance of bonds, the
creation of main highways from the county seat, taking care of the exist-
ing debts of certain of the townships, and providing for a sinking fund,
and amendments have been made by the other branch, withdrawing
certain of the more wealthy and populous townships from its operation,
or liability for the indebtedness to be created, except under condition
requiring the approval of the voters, etc.: *Held*, the amendment is a
material one, requiring for the validity of the act that it be passed in
accordance with the requirements of our Constitution, Article II, sec. 14;
and the principle upon which a valid portion of an act may be severed
and independently upheld has no application to the facts of this case.

**3. Constitutional Law—Statutes—Unconstitutional in Part—Validity of Other
Portion.**

The principle upholding a constitutional portion of an act and declaring
it unconstitutional in part prevails only when they are severable and dis-
tinct, and it clearly appears that the constitutional provisions would
have been enacted by the Legislature without the presence of the other.

**4. Constitutional Law—Legislature—Statutes—Authority Conferred—Test.**

The unconstitutionality of the passage of an act allowing an issue of
bonds for the creation and maintenance of the highways of a county is not
affected by the purpose of the commissioners to act in such manner as to
avoid the constitutional inhibition, the test being whether the authority
conferred by the act was passed in accordance with the constitutional
provision respecting the issuance of the bonds. Constitution, Art. II,
sec. 14.

CIVIL ACTION, heard, on motion to dissolve preliminary restraining
order, before *Carter, J.,* holding courts of Sixteenth Judicial District, on
28 March, 1917.

The action was instituted by plaintiff, citizens and taxpayers of Burke
County, N. C., in behalf of themselves and all other taxpayers of the
county to restrain the board of road commissioners of said county from

42—173

issuing county bonds to the amount of $300,000 and from doing other specified things under a statute of the Legislature passed January, 1917, entitled "An act appointing road commissioners for road improvement of Burke County."

There was judgment that the restraining order be continued to the hearing, and defendants excepted and appealed.

*Avery & Ervin and S. J. Ervin for plaintiff.*
*Spainhour & Mull and Self & Bagby for defendant.*

HOKE, J. Prior to 1917 and under former acts of the Legislature, the improvement of the roads in Burke County seems to have been carried on chiefly under what may be termed the township system, and, pursuant to that system, Morganton Township had voted a bond issue of $50,000 for public roads, $45,000 of which had been issued and sold and much of the proceeds expended. Six other townships had voted bonds for road purposes in amounts aggregating $170,000. It does not appear whether any or what part of these bonds have been issued and disposed of. The remaining townships of the county, five in number, have been paying a special tax in aid of road improvement. Under these conditions, with a view, no doubt, of coördinating effort in this very important matter and making the same more efficient by substituting county for a township system, if this should prove feasible, there was introduced into the lower House of the recent General Assembly, 1917, H. B. No. 3, S. B. 155, a bill incorporating defendants as a road commission for improvement of roads in Burke County and giving them extensive powers over the roads and bridges of the county except the bridges over the main Catawba, authorizing them to issue bonds of the county not to exceed the sum of $300,000 and the annual levy of a tax not more than 30 cents on the $100 valuation of property and 90 cents on the poll for providing a sinking fund and to meet current expenditures for the construction and maintenance of the roads. This commission was authorized, further, to take over the available road funds of Morganton Township and to set aside $50,000 of the bonds to pay the outstanding indebtedness of that township, and to take over the road funds, etc., of any other township that had voted or issued road bonds and provide for paying its indebtedness, and unless such township, on an election called by the commission, shall decide to keep its funds and apply them under the direction of its local board, and the latter is continued in existence for the purpose if such course should be adopted. The commission are further directed to first lay out and construct twelve principal highways leading in different directions from Morganton to specified points, most of them on the lines of adjoining counties, these to be surveyed by expert

surveyors and engineers and to be let out by contract if this can be satisfactorily done, and that any moneys arising from said bond issue, not required for the designated roads, shall be used and expended on other public roads of the various townships, etc. This bill was passed in the House according to the constitutional requirement that bills of this character shall have three general readings on three different days, and on the second and third readings the ayes and noes shall be entered on the journal. Const., Art. II, sec. 14. Having been sent to the Senate, it passed two readings, the ayes and noes being properly entered on the second reading, and, before the third reading, various amendments were adopted by the Senate, among others, section 10 was stricken out and an entirely new section substituted, to the effect that the six townships other than Morganton Township, which had voted for road bonds, should not be subject to the provisions of the act unless, on a vote duly taken, they or any one of them should decide to come under the law. The bill as amended in the Senate then passed its third reading, the ayes and noes being duly entered; was returned to the House and there concurred in, but without roll call and without the ayes and noes being further entered.

It is the accepted position that when a material amendment is made to a bill of this kind, one coming under this constitutional provision, the required readings and entries on the journal shall be taken anew on the bill as amended. *Cottrell v. Lenoir, ante,* 138; *Cotton Mills v. Waxhaw,* 130 N. C., 293; *Glenn v. Wray,* 126 N. C., 730.

In *Glenn's case* the principle is stated as follows: "The Constitution, Art. II, sec. 14, renders invalid any act to raise money, or create a debt, or lay a tax by the State, or to authorize any county, city, or town to do so, unless the bill shall have passed three several readings on three several days in each House, and unless the yeas and nays on the second and third readings shall have been entered on the journals. If an amendment in a material matter is made to the bill, the amended bill should be read over again three times in each House, with the yea and nay vote on the second and third readings entered on the journals."

While the many other amendments might not be so considered, the one striking out section 10 and, in effect, withdrawing six of the populous and wealthy townships in the county from any liability to taxation for the indebtedness created is clearly material within the meaning of these decisions, and we must hold that the statute as it now appears has not been enacted in accordance with the constitutional requirement.

It is contended for defendants that the act does not require that the whole $300,000 should be issued, nor does it appear that such an amount will be necessary, and the commissioners have avowed their purpose not to issue to the limit specified, but only the proportionate part of the

CLAYWELL *v.* COMMISSIONERS.

indebtedness for the remaining townships. But, as said in *Lang v. Development Co.,* 169 N. C., pp. 662-664, in reference to a similar argument: "It is no answer to this position that in the particular case before us no harm is likely to occur or that the power is being exercised in a considerate or benevolent manner, for where a statute is being squared to requirement of constitutional provision it is what the law authorizes, and not what is being presently done under it, that furnishes the proper test of its validity."

Again, it is insisted that even if the statute is unconstitutional as to the bond issue, it may and should be upheld in its other provisions. It is well recongized that a statute which is valid in part may be upheld as to such part, though the remainder of the act must be set aside as being unconstitutional; but the principle is not allowed to prevail unless the valid and invalid portions of the law are severable and distinct and unless it clearly appears that the constitutional provisions would have been enacted by the Legislature without the presence of the others.

A very satisfactory statement of the principle and the limitations upon it is given by *Chief Justice White,* then Associate Justice, in the first *Employer's Liability cases,* 207 U. S., pp. 463-501, as follows: "Equally clear is it, generally speaking, that when a statute contains provisions which are constitutional and others which are not, effect must be given to the legal provisions by separating them from the illegal. But this applies only to a case where the provisions are separable and not dependent one upon the other, and does not support the contention that what is indivisible may be divided. Moreover, even in a case where legal provisions may be severed in order to save, the rule applies only when it is plain that the Legislature would have enacted the legislation with the unconstitutional provisions eliminated." And the decided cases here and elsewhere are in full approval of the position. *Keith v. Lockhart,* 171 N. C., pp. 451-458; *Greene v. Owen,* 125 N. C., 212; *Riggsbee v. Durham,* 94 N. C., 800; *Baldwin v. Franks,* 120 U. S., 678; *Sprague v. Thompson,* 118 U. S., 90.

Considering the present statute in the light of these accepted principles, it will appear, we think, that the $300,000 bond issue is the basis of this entire scheme for furtherance of road improvement in Burke County, and without it there is scarcely an essential feature of the law that could be successfully carried out by the commission charged with the duty of enforcing it. As stated at the outset, the law was enacted chiefly to enable the people of Burke County to change from the township to the county system of working the roads; and, in order to accomplish this purpose it was required that the board of road commissioners take over the available assets of Morganton Township and assume or pay its indebtedness, $50,000, and these bonds were to be used for the

purpose. The same course was to be taken as to the six other townships who had voted bonds, provided they should decide to come in under the law, and for this a portion of the bonds would also be required. The taxes authorized were devoted in great part to paying the interest and providing a sinking fund for the payment of the bond issue. And the principal duties imposed on the commissioners in the way of direct road improvement was to employ expert road surveyors and engineers and, with their aid and advice, provide by contract for the construction of eleven or twelve principal highways, leading from Morganton in different directions to the line of adjoining counties, and these undertakings were to be paid for out of the proceeds of the bond issue, the only means available for the purpose. An endeavor, therefore, to maintain the road commission and leave them without means to carry out any of the duties imposed upon them by the law would be worse than useless, and could only serve to embarrass and impair the efforts of agencies heretofore established and which might otherwise accomplish something in the way of road improvement. Recurring, then, to the authorities heretofore cited, and giving due consideration to the statute, its purpose and circumstances relevant to its correct interpretation, we are of opinion that the propositions to create this road commission and to authorize the bond issue are not separable within the meaning of the principle, and that it is not at all clear that the Legislature would have enacted the one without the other. Indeed, it may be said of a certainty that they would not have done so. We do not hesitate to hold, therefore, that the portion of the law providing for the bond issue being invalid because the statute as it now appears was not passed in accord with constitutional requirement, that the entire act is void, and the road work of Burke County must be carried on under the law as it formerly existed.

There is no error, and, on the facts as they now appear of record, plaintiffs are entitled to a judgment that the injunction be made permanent.

Affirmed.